487 So.2d 1261 (1986)
STATE of Louisiana, Plaintiff-Relator,
v.
Lennis Tommy BROUSSARD, Defendant-Respondent.
No. K84-1092.
Court of Appeal of Louisiana, Third Circuit.
April 23, 1986.
Michael Schilling, Jr., Sp. Asst. Dist. Atty., Lafayette, for plaintiff-relator.
G. Paul Marx, Lafayette, for defendant-respondent.
Before STOKER, DOUCET and FALKENHEINER[*], JJ.
STOKER, Judge.
We considered this case in our opinion reported at 474 So.2d 549. On November *1262 22, 1985 the Louisiana Supreme Court granted the defendant, Lennis Tommy Broussard, a writ. 478 So.2d 896 (La.1985). The Supreme Court set aside our judgment and remanded the case to this Court of Appeal "for disposition of the merits."
The proceeding involved here is based on LSA-R.S. 14:75.2, which is contained within the Louisiana Criminal Code. (See Appendix I.) The district attorney filed a rule requiring defendant Broussard to show cause why he should not be held in contempt of court for failure to pay child support under a stipulation and agreement to pay child support entered into by Broussard pursuant to the provisions of LSA-R.S. 14:75.2. (See Appendix II to this opinion.)
The trial court granted a motion to quash the rule. The writ granted by the Supreme Court on November 22, 1985 apparently requires that we consider the merits of the trial court's granting of the motion to quash, regardless of the procedural mode adopted. In other words, we must examine the reasons or foundation for the dismissal of the rule and determine whether the trial court had a proper basis for such action.
In defendant Broussard's application for the writ granted November 22, 1985, and in his argument before us, he contends that he cannot be subjected to contempt proceedings in this case because certain constitutional guarantees applicable in criminal matters were violated when he made the stipulation and agreement to pay child support. Specifically, Broussard contends that certain constitutional rights should have been explained to him by the court, and the explanation and subsequent stipulation and agreement should have been contemporaneously recorded. In essence, defendant equates the written obligation assumed by Broussard under LSA-R.S. 14:75.2 to a guilty plea, and contends that he cannot be proceeded against by rule, which may possibly result in his imprisonment for contempt, in the absence of a "Boykinization." If not a full "Boykinization," defendant urges there must at least be an explanation by the court of certain basic rights, including the right to be represented by an attorney at the time of the making the stipulation under statute.
In granting the motion to quash the rule, the trial court likened the stipulation and agreement to a "plea bargain arrangement." The trial court reasoned that, because defendant had been charged with criminal nonsupport under LSA-R.S. 14:74, a crime, the offer by the assistant district attorney to permit the defendant to avoid prosecution by taking the alternative route of agreeing to pay support under LSA-R.S. 14:75.2 was in fact a plea bargain. On this basis the trial court quashed the rule for contempt.

REVIEW OF CRIMINAL NONSUPPORT LAWS
We think it would be profitable to defer a recitation of the facts of this case until after a review of pertinent criminal neglect of family articles of the Louisiana Criminal Code, Articles 74, 75 and 75.2 (LSA-R.S. 14:74, 75 and 75.2):

ARTICLE 74
As background, under LSA-R.S. 14:74, criminal neglect of family is the desertion or intentional nonsupport by either parent of his minor child who is in destitute or necessitous circumstances. Physical incapacity which prevents a person from seeking any type of employment constitutes a defense to the charge of criminal neglect of family. Punishment is no more than $500 or not more than six months in jail, or both. The court may issue a support order directing the defendant to pay a certain sum at such periods as the court may direct, and it may increase or decrease the amount as the circumstances require. Under LSA-R.S. 15:305, the judge may suspend the sentence and place the convicted defendant on probation, and he may condition the probation on the payment of support.

ARTICLE 75
LSA-R.S. 14:75 allows the court prior to trial to issue a support order in lieu of *1263 imposing punishment under LSA-R.S. 14:74, if the defendant consents. If the defendant violates this order, the court may find him in contempt and may imprison him for no more than six months, and impose a fine of no more than $100 (or the total amount of unpaid support). If subsequent contempt proceedings are brought, the jail term is mandatory. We set forth Article 75 in full in Appendix I to this opinion.

ARTICLE 75.2
LSA-R.S. 14:75.2 reads:
"In cases in which the responsible parent or other person owing a duty of support and the district attorney stipulate to an order of support, the court shall have the power to issue an order of support under the provisions of R.S. 14:75 without the necessity of instituting criminal proceedings under the provisions of R.S. 14:74."
The brief provisions of Article 75.2 just quoted make it clear that this article simply provides for an alternative mode for arriving at a support order of the nature provided in Article 75. Enforcement of a support order issued under either article follows the procedure provided in Article 75. Consequently, in considering the issues of this case we consider the provisions of Article 75 as well as Article 75.2.
A major difference between a situation laid under Article 75 and one laid under Article 75.2 is that in one case the support order results from the defendant's consent "prior to trial on a charge of criminal neglect of family" and in the other case the support order may be issued with the consent (stipulation) of the defendant "without the necessity of instituting criminal proceedings under the provisions of R.S. 14:74." Although Article 75.2 employs the words "stipulate to an order of support," this language means the same as the language of Article 75 which states "[w]ith the consent of the defendant."
From the brief review of the statutory law given above, the legislatively provided scheme is apparent. Under Article 74 a criminal offense of neglect of family is provided. As in the case of any criminal offense denounced under our criminal laws, the elements of the offense which must be proved are set forth, and, in the case of a finding of guilt, the court may impose punishment to include imprisonment. Also, the court may place the offender on probation pursuant to LSA-R.S. 15:305. Thus, a person found guilty, or who pleads guilty, to the crime of criminal neglect of family is branded as a criminal, acquires a criminal record and bears the stigma of being a convicted criminal (albeit that its quality may be of a somewhat different nature than that attached to some crimes).
Clearly the Article 75 approach is a measure of considerateness designed to permit consenting parents to avoid the criminal implications of prosecutions under Article 74. Article 75.2 carries even further considerateness of not blotting the neglectful parent's character by permitting stipulation (consent) without the necessity of criminal proceedings under Article 74 being instituted. More important for the issues of this case, as we see it, are the specific statutory schemes established by Article 75 because they also apply to agreements under Article 75.2.
A close reading of the entire provisions of Article 75 shows that, upon the issuance of a consent order thereunder, the consenting defendant is in a position little different from a party against whom a judgment for alimony or child support is rendered in a civil adversary proceeding in civil court. Under Article 75 the consenting defendant is not prosecuted, makes no plea (either not guilty or guilty), admits to no crime, is not found guilty or innocent, is not subjected to punishment under the order itself and is not placed on probation, supervised or unsupervised. We take judicial notice of the fact that some trial courts and some prosecuting authorities prefer to proceed under Article 74. This approach gives the trial court, upon a finding of guilty, more direct control over compliance with support requirements imposed through conditions of probation. The court can apply sanction *1264 for violation of its order by revoking probation and imprisoning the defendant under the original sentence.
Contrasted with Article 74, Article 75 provides for enforcement of the support obligation consented to through the procedure of a rule to show cause. LSA-R.S. 14:75B. On such a rule to show cause why the consenting defendant should not be found in contempt of court, if the defendant is found guilty, then he may be imprisoned for not more than six months. Nevertheless, the defendant may be placed on probation, R.S. 15:305, with conditions of probation to be set by the court. When viewed in its essence, a consenting defendant under Article 75 or a consenting party under Article 75.2 is no worse off than a defendant in a civil suit against whom an alimony or support judgment is rendered. All the court can do is hold a rule to show cause in which imprisonment is a possible result.
We note, nonetheless, that the maximum term of imprisonment permissible as punishment for contempt in disobeying an order for payment of child support or alimony arising out of a civil judgment in a civil adversary proceeding is three months. C.C.P. art. 227 and LSA-R.S. 13:4611. Although this is only one-half the term of imprisonment allowed for contempt under Article 75, the difference is one of degree or length rather than of substance relative to the court's permissible action.
General similarities between the Article 75 approach and the advisory approach in civil suits in civil court are as follows:
1. Initially the court issues an order in one case and renders a judgment in another directing the responsible party to pay specific sums at specific times to designated recipients.
2. Enforcement of the support order or judgment is through the contempt procedures mentioned above rather than proceedings to revoke a sentence for the crime of criminal neglect of family.
3. If the party required to pay falls behind in periodic payments, the court may convert the arrearage into a money judgment which may be made executory by any Louisiana court. Cf. LSA-R.S. 14:75E and C.C.P. art. 3945.
4. The initial order or judgment directing support judgments may subsequently be reviewed by trial court. Subsection A of Article 75 provides: "The amount of support as set by the court may be increased or decreased as the circumstances may require." (Emphasis supplied.)
Judicial construction of the quoted provision is lacking. Consequently, there is no indication of how closely the rule for changing the amount of support under Article 75 orders may parallel the rules developed in reconsideration of alimony and child support judgments in civil cases. We have found no statutory law for reconsiderations under Article 75A. However, in State v. Collins, 459 So.2d 99 (La.App.2d Cir.1984), the defendant entered into an Article 75.2 stipulation, and the court issued an order fixing the amount of support. Shortly thereafter the State filed a motion to amend and increase the amount provided. The trial court granted an increase. The Court of Appeal for the Second Circuit reversed. The opinion contains a reference to the language of Article 75A. The court of appeal based its reversal on the fact that within the brief period of time between the filing of the stipulation and the first order and the filing of the motion to increase support, the motion was brought "without any change in circumstances, most particularly defendant's financial ability."
The similarities referred to above indicate no more than a rough parallel, but they do strongly indicate that the provisions of Article 75 and 75.2 are not designed to determine guilt or impose punishment. The possibility for imprisonment as a result of contempt proceedings can result only if the obligor disobeys a support order. This liability is no more than what an obligor acquires under a judgment in a civil proceeding for alimony or child support based on the Louisiana Civil Code.

*1265 REVIEW OF FACTS
On May 14, 1980 defendant Broussard was charged by bill of information with criminal neglect of family violation of LSA-R.S. 14:74. On May 27, 1980 defendant was arrested for the above charge but posted bond and was released. He contacted the district attorney's office and made an appointment to discuss the charges pending. On July 3, 1980 he met with an assistant district attorney and signed a written stipulation pursuant to LSA-R.S. 14:75.2 wherein he agreed to pay $150 per month in child support, effective June 20, 1980, and to increase said support to $250 per month, effective July 20, 1980, and each month thereafter. On June 16, 1980, on the basis of the defendant's signing the stipulation, the trial court rendered and signed a consent judgment.
This court in State v. Broussard, supra, 474 So.2d at 551, described the ensuing facts as follows:
"On July 19, 1984 a rule to show cause why Mr. Broussard should not be held in contempt was entered. Mr. Broussard had previously been found guilty of contempt of court for failure to comply with the order of support and sentenced to three months in the parish jail, which sentence was suspended on the condition he make his regular payments and made additional $100 per month payments when he became employed. He was arrested once for failure to comply with the conditions of the suspended sentence. The rule was entered on July 19, 1984 for his continued failure to comply with the consent judgment.
"Broussard filed a motion to quash and a memorandum in support of that motion. The motion was granted after a hearing on October 4, 1984."
The reported case containing the quotation just given reflected our second consideration of defendant's motion to quash. Initially the State sought relief by writ application which was granted peremptorily, reversing and remanding without extensive opinion. The Supreme Court then on writ vacated our ruling and remanded the case to us for briefing, argument and opinion. Our opinion in compliance with that writ directive is the opinion recorded at 477 So.2d 549. We held only that the rule for contempt dismissed on a motion to quash was not a correct procedural device, as the rule was laid under LSA-R.S. 14:75.2, was civil in nature.
On November 22, 1985 the Supreme Court granted a second supervisory writ on application of defendant. The language of the writ granted is as follows:
"GRANTED. The judgment of the Court of Appeal is set aside. The case is remanded to the Court of Appeal for disposition of the merits of the appeal."
Actually no appeal is involved. The matter is here on a supervisory writ. We may have inadvertently injected some confusion in the matter by incorrectly referring in our opinion in 474 So.2d 549, in one instance, to the State's writ application to us as an appeal. In any event, we address now what we deem to be the merits referred to by the Supreme Court. We determine these merits largely from the allegations contained in the defendant's application for supervisory writs addressed to the Supreme Court, the issues discussed by counsel in their various briefs, and the questions dealt with by them in oral argument.

CONTENTIONS AND POSITIONS OF THE PARTIES
In the statement of facts contained in defendant's last writ application addressed to the Supreme Court defendant notes that he was not represented by counsel at the time he signed the Article 75.2 stipulation. When the present rule for contempt was filed defendant employed his present counsel. The following statement appears:
"... he retained present counsel, who filed a motion to quash with the trial court on the basis that this applicant could not be imprisoned since he was not aware of his right to appointed counsel at the time he entered the stipulation, and in fact waived all of his possible *1266 defenses to the criminal charge without a knowing and intentional waiver."
As assignments of error in our opinion at 474 So.2d 549 defendant urged the following to the Louisiana Supreme Court:
"ASSIGNMENT OF ERRORS
"I. THE HONORABLE THIRD CIRCUIT COURT ERRED IN HOLDING THAT PROCEEDINGS IN DISTRICT COURT INVOLVING A BILL OF INFORMATION, ARREST AND POSTING OF BAIL WERE CIVIL AND NOT CRIMINAL. AND THAT SUCH TITLE WOULD BE DISPOSITIVE OF CONSTITUTIONAL RIGHTS.
"II. THE HONORABLE THIRD CIRCUIT COURT ERRED IN HOLDING THAT THE DISTRICT ATTORNEY MAY BE EMPOWERED TO ADVISE CRIMINAL DEFENDANTS OF THEIR RIGHTS AND SECURE A KNOWING AND INTELLIGENT WAIVER OF SAME."
The assertions contained in these assignments are, in our opinion, conclusionary and beg the question of violation of due process rights. The assertions are based on defendant's conclusions that proceedings under Article 75, including those based on court orders on Article 75.2 stipulations, are inextricably bound up with Article 74, the criminal article. We reject this contention in the belief that Article 75-75.2 proceedings stand on their own. In essence, defendant contends that, because Article 75-75.2 proceedings are based on articles contained in the Louisiana Criminal Code and are conducted in criminal court, the whole gamut of constitutional safeguards and requirements applicable to purely criminal prosecutions come into play. Defendant's arguments are more refined, but in essence this is his position.[1]
The State's position was set forth by us in our opinion in 474 So.2d 549. In view of the granting of the writ by the Supreme Court following that opinion, we read Assignment Six as being the only viable position which the State may now maintain. That assignment as we stated it reads:
"6. Alternatively, and only if this Honorable Court deems that the motion to quash was in fact an improperly captioned petition to nullify or vacate the consent judgment, the trial court erred in granting defendant-in-rule's motion to quash as the record clearly shows the requirements of due process were not involved."
In the brief submitted on behalf of defendant with his application for a supervisory writ to the Supreme Court, defendant stated the issues to be:
"1. Is a defendant in a criminal non-support case entitled to counsel?
2. Can the defendant in a non-support case waive his right to counsel knowingly and intelligently when advice of that right is given by the prosecuting attorney?
3. Should the Court in a non-support case make a contemporaneous record of the defendant's knowing and intelligent waiver of his right to counsel when he enters a stipulation under R.S. 14:75.2?

*1267 4. In the absence of a contemporaneous record of the waiver, should the defendant in a non-support case be incarcerated and the waiver assumed?"

DISCUSSION OF THE ISSUES
In discussing our views of the issues we reiterate what we have already said, namely, that defendant's position largely begs the question or questions. This is so because defendant insists that Article 75 and 75.2 proceedings are "criminal in nature" (p. 11 of defendant's application), and if one accepts the postulate that the proceedings are inextricably bound up with Article 74 prosecutionsand therefore are prosecutionsthen defendant's contentions concerning the right to counsel, including the requirement of a knowing and intelligent waiver before a judge with contemporaneous recording of the explanation and waiver, would unquestionably follow. In such event the granting of the motion to quash would be correct.
We have considered all of the cases cited by defendant and find none that are authority for the proposition that a consent or stipulation under Articles 75 or 75.2 may not be enforced if the consent or stipulation was uncounseled and not subject to a judicial inquiry, contemporaneously recorded, in which a court determines that the right to counsel is knowingly and intelligently waived. This is not to say that these rights do not come into play at the stage in which a party who has consented to an Article 75 or 75.2 arrangement is subjected to contempt proceedings. At that point it is a different matter.
The cases cited by defendant focus on the rights which come into play at the contempt proceeding stage and not on the question of prohibition of basing contempt proceedings on agreements made without benefit of counsel or proper waiver determination. See for example Ridgway v. Baker, 720 F.2d 1409 (5th Cir.1983).
Defendant refers to City of Monroe v. Fincher, 305 So.2d 108 (La.1974) which follows Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972). Those cases deal with crimes made more grave because the offender has been previously convicted of the same offense one or more times. Fincher, for example, dealt with a charge of DWI, second offense, where the offender had not received, nor waived, the assistance of counsel. Here, however, we do not have a Fincher or Argensinger situation. Defendant Broussard was not adjudged guilty of any crime at any time, and his stipulation did not constitute a plea of guilty to the crime of criminal neglect of family. We disagree with the trial court in its expressed opinion that signing of the stipulation was in effect the result of a plea bargain. As we discussed earlier, Article 75 or 75.2 proceedings, although they are alternative to prosecution under Article 74 for criminal neglect of family, effectively take matters out of a prosecutorial context and place the desired social end in a courtapproved agreement which may be enforced through contempt proceedings. Contempt proceedings do not come into play unless the obligor does not live up to his or her agreement. Any imprisonment which may result is for the purpose of enforcing the obligation agreed to and not to punish. However, at that stage, since imprisonment may result, advice as to the right, proper waiver and contemporaneous recording is another matter.
The only Louisiana case coming close to the issues we consider here is State v. Hall, 450 So.2d 400 (La.App.2d Cir.1984). The defendant Hall in that case alleged that he was not fully advised of his rights before he signed a stipulation similar to the one involved here. The stipulation recited that Hall had been fully advised of his criminal rights when in fact he had not been so advised. The State representative who took the stipulation admitted that Hall was not advised of his rights. The Second Circuit on appeal invalidated the stipulation but specifically held that "[u]nder these circumstances, we need not decide whether or not the law requires them." The invalidation was made because the stipulation represented that Hall was advised of his rights when this was not true. The Second *1268 Circuit stated that this circumstance entitled Hall to have the stipulation made under Article 75.2 nullified. Consequently, the question of whether a party stipulating under Article 75 or 75.2 must be advised of his right to counsel and accorded other rights discussed above remains an open question.
Here, unlike Hall, there is no contention that Broussard was in fact not advised of his rights. The contention is that it may not be accomplished by an assistant district attorney or, more correctly, by anyone but a judge of the court having jurisdiction with contemporaneous recording.
We are not unmindful of the fact that in this case events began when Broussard was charged by bill of information with criminal neglect of family in violation of Article 74 which was followed by his arrest. We are not convinced that this is pertinent or that it somehow fuses the stipulation under Article 75.2 with the commencement of prosecution under Article 74. If this were so, Article 75 consents would also be affected because Article 75 provides for consent agreements "at any time prior to trial on a charge of criminal neglect of family." As we demonstrated under our discussion of the law, proceedings under Article 75 through consent or Article 75.2 through stipulation (as in this case) break the connection with the instituted prosecution. Such proceedings stand on their own and are not prosecutorial proceedings.
Defendant urges that his family was in fact not in need, that he could not have been found guilty of criminal neglect of family, and if he had been represented by an attorney he would have been so advised and would not have entered the stipulation. He further urges that he is locked into the stipulation with no means for relief from an onerous agreement to pay support. We have shown that this is not so. Article 75 provides that payments shall be fixed "after considering the circumstances and financial ability of the defendant." Also it provides: "The amount of support as set by the court may be increased or decreased as the circumstances may require." As for defendant's contention that had he been properly advised by counsel he could have "beaten the rap" consisting of the charge of criminal neglect of family, we observe that he nevertheless stipulated only to what was his duty of support under civil law. He admitted to no crime and he did not assume any obligation he did not owe as a natural obligation or under fundamental civil law.
What we have said thus far should dispose of the contention that there should be a transcript of verbalized advice of rights given by the court to consenting defendants. This right relative to criminal prosecutions is statutorily provided for to some extent in LSA-C.Cr.P. art. 514. That statute provides:
"The minutes of the court must show either that the defendant was represented by counsel or that he was informed by the court of the defendant's right to counsel, including the right to court-appointed counsel and that he waived such right."
This statutory provision does not in its specific terms provide for a recorded transcript. However, in our view Article 514 of the Code of Criminal Procedure, which requires only that the court minutes reflect that a defendant is informed of his right to counsel and waived the right, does not apply to proceedings under Article 75 and 75.2 of the Criminal Code until they reach the stage of a contempt proceeding.
In our judicial system a party brought into court is entitled to be represented by counsel. This right applies to civil as well as criminal proceedings. This does not mean, of course, that parties must be provided with counsel by the State in all types of proceedings. Due process imposes in some types of cases the requirement that the right of counsel be brought home to a party, and any waiver of counsel must be tested by the court according to constitutionally established rules. We hold that a party who consents to an Article 75 order or stipulates to such an order on the basis *1269 of Article 75.2 is not involved in a judicial process which requires the following of strict due process proceedings. In either case the consenting party merely enters into a consensual agreement.
We include the stipulation signed by defendant Broussard in this case as Appendix II. In the opening paragraph of that stipulation Broussard acknowledges that he was advised of his civil and criminal rights and avers he knows of certain rights. It may well be that this acknowledgment and admission is entirely gratuitous and unnecessary. We believe the stipulation could stand without such a preamble. However, there is no suggestion that the statement is untrue. Consequently, it does not present the issue addressed in State v. Hall, supra.

CONCLUSION
We conclude that no violation of defendant's due process rights took place as a result of the consent judgment signed by the trial court on June 16, 1980, based on the stipulation signed by Broussard reflected in Appendix II. This conclusion is confined to the entering of the stipulation and the granting of the judgment. When the rule for contempt was filed, full due process rights came into play with respect to that rule because of the possibility of imprisonment. However, the coming into play of those rights at that stage does not reach back and affect the stipulation and consent judgment.

DISPOSITION
For the foregoing reasons we conclude that there is no merit to the assignments of error urged by defendant Broussard. The granting by the trial court of defendant's motion to quash the rule to show cause why he should not be held in contempt was error. We reverse the trial court's grant of the motion to quash and remand the case to the trial court for further proceedings consistent with the views expressed herein.
REVERSED AND REMANDED.

APPENDIX I
Article 75 of the Louisiana Criminal Code (LSA-R.S. 14:75) reads as follows:
§ 75. Support provisions
A. With the consent of the defendant at any time prior to a trial on a charge of criminal neglect of family, the court, in lieu of imposing the punishment herein before provided, may issue a support order, after considering the circumstances and financial ability of the defendant, directing the defendant to pay a certain sum at such periods as the court directs. This support shall be ordered payable to the spouse, to the tutor or custodian of the child, to the court approved fiduciary of the spouse or child, or to the Louisiana Department of Health and Human Resources in an AFDC case or in a non-AFDC case in which the department is rendering services, whichever is applicable; hereinafter, said payee shall be referred to as the "applicable payee." The amount of support as set by the court may be increased or decreased as the circumstances may require. The court may also require the defendant to enter into a recognizance, with or without surety, in order to insure the payment of support. The condition of the recognizance shall be that the defendant shall make his or her personal appearance in court whenever required to do so, and shall further comply with the terms of the order or of any subsequent modification thereof.
B. If the defendant violates the terms of the court order, the court, upon motion, may issue an order directing the defendant to show cause why he or she should not be found in contempt of court for failure to pay the court ordered support, which rule shall be tried in a summary manner. If on the hearing of such rule the court finds the accused guilty of contempt for failure to comply with the judgment of the court in paying the support assessed, the court may punish for such contempt as follows:
(1) The court may sentence the defendant to be imprisoned for not more than six months. The court in its discretion *1270 may suspend said term of imprisonment in whole or in part on condition the defendant pay the total amount of unpaid support in a manner to be determined by the court and on such other conditions as set by the court. If the court suspends the sentence in whole or in part, the court may place the defendant on probation under R.S. 15:305 with conditions of probation to be set by the court. In addition, the court may fine the defendant an amount not to exceed one hundred dollars to be paid to the applicable payee; or
(2) The court may order the defendant to pay the total amount of unpaid support to the applicable payee within a period of time fixed by the court. During this period of time, the defendant may be released upon giving bond for his or her appearance in court if he or she fails to comply with the order of the court within the period of time fixed. Should the defendant not pay the total amount of unpaid support which the court has ordered, the defendant shall be imprisoned for not more than six months.
C. Upon a second or subsequent finding of contempt, the court shall sentence the defendant to imprisonment for not more than six months. At the discretion of the judge, the sentence may be suspended by the court upon payment of:
(1) The amount of the order for unpaid support,
(2) The amount of unpaid support accrued since the date of the said order, and
(3) The amount of all attendant court costs.
D. Upon recommendation of the state attorney or the support enforcement officer, or both, the remainder of the sentence may be suspended upon payment of a lesser amount plus attendant court costs. Such payment shall apply toward but not extinguish the total amount due.
E. In addition to the above, the court shall render judgment directing the defendant to pay the total amount of unpaid support to the applicable payee and attendant court costs. Such judgment shall have the same force and effect as a final judgment for money damages against the defendant. This judgment may be made executory by any Louisiana court of competent jurisdiction on petition of the department or the district attorney.
F. If the defendant has entered into a recognizance in the amount fixed by the court to insure the payment of the support, the court may order the forfeiture of the recognizance and enforcement thereof by execution. The sum recovered shall be paid in whole or in part to the applicable payee. However, should the court order both the forfeiture of the recognizance and at the same time order the defendant to pay all unpaid support under the sentence for contempt, the amount of unpaid support plus attendant court costs and fines shall be the maximum payable.
Amended by Acts 1975, No. 115, § 1, eff. July 1, 1975; Acts 1981, No. 812, § 4, eff. Aug. 2, 1981; Acts 1981, Ex.Sess., No. 36, § 4, eff. Nov. 19, 1981; Acts 1984, No. 452, § 1.
 APPENDIX II
 The stipulation under LSA-R.S. 14:75.2 and the State
 of Louisiana, represented by the office of the District
 Attorney for Lafayette Parish, together with the consent
 judgment rendered by the trial court appear as follows:
*1271
STATE OF LOUISIANA : 15TH JUDICIAL DISTRICT COURT
VERSUS NO. FC80-135 : PARISH OF LAFAYETTE 
 : STATE OF LOUISIANA
LENNIS TOMMY BROUSSARD : JUDY H. BROUSSARD 
 STIPULATION UNDER LA. R.S. 14:75.2
 I, Lennis Tommy Broussard , after being fully
advised of my civil and criminal rights, knowing of my right to a trial,
right to confront witnesses against me, and the right to be represented by
an attorney, do hereby stipulate and agree with the Office of the District
Attorney to a stipulated order of support under La. R. S. 14:75.2 to pay
child support for the following named children:
 (NAME) (DOB)
 Sharon Broussard 9-19-69 
 Daren Broussard 6-11-70 
 Celissa Broussard 9-24-71 
 Nikki Broussard 11-25-74 
 ___________________________________ _______________________
As follows: $150.00 per month , commencing on the
 20th day of June , 1980 , beginning
July 20, 1980 payments to be increased to $250.00 per month and thereafter
$250.00 per month on the 20th of each month. Payments to be made through
the Office of Family Services, 125 Rue Beauregard, Lafayette, Louisiana
70508.
 I, Lennis Tommy Broussard , understand that noncompliance
with this stipulation may result in Contempt of Court proceedings and
imprisonment and/or a fine under La. R. S. 14:75.
 I, Lennis Tommy Broussard , further agree to notify the
Office of the District Attorney of any changes of circumstances which
could alter this stipulation, including a change of employment or residence.
 The District Attorney's Office, availing itself of the provisions
of La. R.S. 14:75.2 to alleviate the necessity of instituting criminal
proceedings under La. R.S. 14:74 does hereby concur and consent to the
offer of support from the responsible parent as stated above.
Signed this 3rd day of
 
 June , 19 80 . DEFENDANT
*1272
 
 ASSISTANT DISTRICT ATTORNEY
 CONSENT JUDGMENT
Considering the above and foregoing stipulation filed in this
matter;
 IT IS ORDERED that Lennis Tommy Broussard pay
child support on behalf of the child(ren) named in the above
stipulation as follows: $ 150.00 per month , commencing
on the 20th day of June , 19 80 , beginning
July 20, 1980, payments are to be increased to $250.00 per month and
thereafter $250.00 per month on the 20th of each month. Payments
are to be made through the Office of Family Services, 125 Rue Beauregard;
Lafayette, Louisiana 70508.
 JUDGMENT READ AND SIGNED ON THIS 16 DAY OF 
19 80 .
 
 JUDGE
NOTES
[*] W.C. Falkenheiner, Seventh Judicial District Court, Parish of Concordia, Participated as judge ad hoc in this decision.
[1] In defendant's application for a supervisory writ which was granted November 22, 1985, the defendant stated:

"It cannot be reasonably concluded that your applicant was not involved in criminal proceedings. Clearly the framework of the statutes under Title 14 seek to enforce the obligation of child support by threatening criminal sanctions against the defendant if he does not pay according to the Court's instructions. A bill of information was filed herein on May 19, 1980. (See Appendix) The defendant was arrested and forced to post bond in order to secure his release.
"It was argued by the State that this defendant voluntarily contacted the D.A.'s office for an appointment to discuss a civil stipulation to pay support! It is incredible that the coercion of arrest, booking and threatened prosecution can somehow be separated from the essential element of the criminal charge: Failure to pay support. This argument is totally without merit, and it is clear on the record of these proceedings that the criminal nature of the proceedings was what made them effective and what led to the stipulation secured by the District Attorney's office
"Further, even accepting the extended argument that this was a civil proceeding, there is no legal authority for holding that such a label eliminates constitutional guarantees afforded to all citizens."