SCHOTT, Judge.
We granted certiorari in order to consider the validity of a judgment of the juvenile court ordering blood tests.
In March 1984 defendant was charged with criminal neglect of family, R.S. 14:74, by failing to support Jessica who was bom in December 1981. Defendant and the mother were never married but on September 27, 1982 defendant executed a formal act before a Notary and two witnesses acknowledging that he was the father and legitimating the child in accordance with C.C. art. 200. On July 10, 1984 defendant entered into a consent judgment pursuant to R.S. 14:75 in which he was ordered to pay $25 per week for the child’s support. In October 1984 a rule for an increase in support was made absolute and defendant was ordered to pay $40 per week. The record discloses that defendant made some payments in compliance with these orders. In May 1987 defendant appeared in court in response to a contempt rule for his failure to make the support payments. At this hearing defendant denied being the child’s father and requested blood tests. The trial court granted the request but stayed her ruling pending the outcome of the state’s writ application.
Defendant’s consent to the judgment of support in 1984 was the equivalent of a plea of guilty to the charge of criminal neglect. State v. Broussard, 490 So.2d 273 (La.1986). When the delay ran for taking an appeal from defendant’s conviction it became final. The trial court cannot at this point in time properly entertain an attempt by the defendant to disprove an element of the offense of which he was convicted.
Furthermore, defendant’s late blooming attempt to dispute his paternity of the child comes in the face of his formal acknowledgement of paternity almost five years ago together with his payment of some support pursuant to the consent judgment which payment can be construed as a recognition on his part of his obligation toward the child. Under these circumstances defendant is estopped from disputing his paternity and the order of the trial court for blood tests would serve no purpose.
Accordingly, the order of the trial court that blood tests be made on the defendant and the child is vacated and set aside. The case is remanded to the trial court for further proceedings to enforce child support by the defendant.
REVERSED AND REMANDED.
PER CURIAM.
At the request of the trial judge we will attempt to clarify that portion of our original opinion in which we referred to and discussed State v. Broussard, 490 So.2d 273 (La.1986).
In this per curiam opinion the Supreme Court reversed and vacated the opinion on the Third Circuit Court of Appeal reported at 487 So.2d 1261. As we read the Court of Appeal decision, Broussard was contending that he could not be held in contempt of court for violating an agreement to pay child support which he had entered into *463 pursuant to LSA-R.S. 14:75.2 because at the time he made the agreement he was entitled to an explanation of certain basic rights including his right to be represented by an attorney at the time of the stipulation. The trial court upheld his position and likened the stipulation to a plea bargain. He reasoned that defendant has been charged with a crime, a violation of R.S. 14:74, and the offer by the state to allow him to agree to pay support under R.S. 14:75.2 was a plea bargain. Thus, the trial court quashed the contempt rule.
The Third Circuit disagreed with this position. It found no authority “for the proposition that a consent or stipulation under articles 75 or 75.2 may not be enforced if the consent or stipulation was uncounseled and not subject to a judicial inquiry, contemporaneously recorded, in which a court determines that the right to counsel is knowingly waived.” 487 So.2d at 1267.
The court held:
“... a party who consents to an Article 75 order or stipulates to such as order on the basis of Article 75.2 is not involved in a judicial process which requires the following strict due process proceedings. In either case the consenting party merely enters into a consensual agreement.” 487 So.2d at 1268.
The Supreme Court summarily reversed this opinion and reinstated the judgment of the trial court. Unfortunately, the court did not write a full blown opinion, but it held clearly that some of the provisions of R.S. 14:75.1 and 75.2 “are necessarily criminal in nature.” Addressing the specific question involved, the court held that the defendant was, at the time the R.S. 14:75.2 agreement was made, entitled to counsel and to have one appointed to represent him if he was indigent. The concluding sentence of the opinion is: “The trial judge shall explain the defendant’s rights to him (cf. the customary “Boykin” examination) before any proceeding under 14:75 is initiated.”
Because the Supreme Court requires a Boykin examination (which is the procedure required when a defendant pleads guilty to a criminal charge) to be conducted when a consent judgment pursuant to R.S. 14:75 is entered, we concluded in our original opinion that the present defendant’s consent to the judgment of support in 1984 was the equivalent of a plea of guilty to a charge of criminal neglect. As pointed out in our original opinion, when the delay ran for taking an appeal, the guilty plea became final. We adhere to that opinion. Having been convicted on his guilty plea in 1984 the trial court cannot entertain his attempt almost three years later to disprove an element of the offense of which he was convicted.
CLARIFICATION GRANTED.