688 So.2d 1181 (1996)
Edward ROBERTS, PlaintiffAppellant,
v.
Diane Espree FRANKLIN, DefendantAppellee.
No. 96-290.
Court of Appeal of Louisiana, Third Circuit.
October 9, 1996.
Harold Dewey Register Jr., Lafayette, for Edward Roberts.
Diane Espree Franklin, Pro Se.
Cynthia Guillory, Lake Charles, for Derron Espree.
Before KNOLL, WOODARD and DECUIR, JJ.
WOODARD, Judge.
Edward Roberts, the presumed father, filed a petition to disavow paternity and moved to compel blood tests. A curator ad hoc, appointed for the minor child, subsequently filed Exceptions of No Cause and No Right of Action and Prescription. The court granted the Exceptions, and Roberts appealed. For the following reasons, the decision of the trial court is vacated and remanded with instructions.

FACTS
Appellant, Edward Roberts, and Appellee, Diane Espree Franklin, were involved in an intimate relationship in 1989. Diane became pregnant and birthed a child, Derron Espree, on February 20, 1990. On January 8, 1991, Edward signed a document entitled "Acknowledgment *1182 of Paternity," formally declaring that he was Derron's biological father. The State of Louisiana instituted proceedings against Edward to obtain child support for Derron. Pursuant to same, Edward signed a consent judgment in October of 1991 and agreed to provide support by paying $250 a month. Notwithstanding, in August of 1995, after years of acknowledgment of the child, Edward filed a petition to disavow paternity, claiming that Derron did not resemble him in looks or personality and that he was away from Diane during the time she conceived. Further, he requested a blood test to prove he was not the child's biological father.
The child's court-appointed curator ad hoc filed an Exception of No Cause and No Right of Action and Prescription. A hearing was held on November 20, 1995 in which the trial court granted the state's exception.

ASSIGNMENTS OF ERROR
By his sole assignment of error, appellant contends that the trial court erred in granting the Exception of No Cause of Action and Prescription.

LAW & ARGUMENT
La.Civ.Code art. 178 states that children are either legitimate or illegitimate. Legitimate children are those who are either born or conceived during marriage or who have been legitimated in the manner provided by law. Illegitimate children are those who are conceived and born out of marriage. La.Civ. Code arts. 179-180. A father or mother can legitimate his or her illegitimate children by an act passed before a notary and two witnesses, declaring that it is the intention of the parent making the declaration to legitimate such child or children. See La.Civ. Code arts. 200, 203. "An authentic act constitutes full proof of the agreement it contains, as against the parties, their heirs, and successors by universal or particular title." La.Civ.Code art. 1835.
Edward voluntarily signed a formal acknowledgment of paternity on January 8, 1991. Furthermore, Edward signed a consent decree in October of 1991, pursuant to a judgment ordering him to pay $250 a month to Diane for child support. This is a recognition by both the court and Edward that he was obligated to pay child support to the minor child. Thus, it impliedly judicially recognizes him as the father. [See State v. Holloway, 511 So.2d 461 (La.App. 4 Cir. 1987)].
Despite these facts, Edward's right to challenge the acknowledgment is granted in La.Civ.Code art. 207 which provides that "[e]very claim, set up by illegitimate children, may be contested by those who have any interest therein." Because, at the very least, Edward pays monthly child support to Derron, Edward has an interest in disavowing a child to which he is not biologically related.
However, in Succession of Robinson, 94-2229 (La.5/22/95); 654 So.2d 682, the court noted:
Although art. 203 does not expressly preclude executing an acknowledgment where no biological relationship exists, this conclusion is self-evident and definitional of an acknowledgment. An acknowledgment is an avowal emanating from the "mother" or "father" to establish maternal or paternal filiation. 1 M. Planiol, Treatise on the Civil Law Sec. 1476 (La.St.L.Inst. transl.1959). The word "filiation" describes the fact of biological parentage. La.Civ.Code arts. 193-197. Thus, through the acknowledgment, the "mother" or "father" provides proof of maternal or paternal filiation, that is, biological parentage. Absent a biological relationship, the avowal is null. "A fact cannot be avowed when it has never existed." 1 Planiol, supra, Sec. 1490(2). If the acknowledgment is null, it produces no effects.
Id. at 683. See also McKinley v. McKinley, 25,365 (La.App. 2 Cir. 1/19/94); 631 So.2d 45.
Therefore, if a biological relationship does not exist between Edward and Derron, the acknowledgment was made in contravention of the law, particularly, the substantive requirements of art. 203. Accordingly, evidence of paternity is central to the issue of the validity of the acknowledgment. Robinson, 654 So.2d 682.
La.R.S. 9:396 states:

*1183 A. Notwithstanding any other provision of law to the contrary, in any civil action in which paternity is a relevant fact, or in an action en desaveu, the court, upon its own initiative or upon request made by or on behalf of any person whose blood or tissue is involved, may or, upon motion of any party to the action made at a time so as not to delay the proceedings unduly, shall order the mother, child, and alleged father to submit to the collection of blood or tissue samples, or both, and shall direct that inherited characteristics in the samples, including but not limited to blood and tissue type, be determined by appropriate testing procedures. If any party refuses to submit to such tests, the court may resolve the question of paternity against such party or enforce its order if the rights of others and the interests of justice so require.
La.R.S. 9:305 states:
Notwithstanding the provisions of Civil Code Art. 189 and for the sole purpose of determining the proper payor in child support cases, if the husband, or legal father who is presumed to be the father of the child, erroneously believed, because of misrepresentation, fraud, or deception by the mother, that he was the father of the child, then the time for filing suit for disavowal of paternity shall be suspended during the period of such erroneous belief or for ten years, whichever ends first.
No specific codal or statutory provision governs the time limitation within which a disavowal action must be brought by an alleged father who is not the husband of the mother. The Civil Code refers to time limits for disavowal by the husband. La.Civ.Code arts. 187-190. Therefore, the applicability of the statute's suspension of a specific time limit for disavowal is misplaced under the facts of this case. Even if there were a time limit, the statute provides for a ten-year period during which a legal father can disavow his child if he erroneously believed he was the father because of misrepresentations by the mother. Thus, Edward's right to disavow paternity, which he claims is based, at least in part, on Diane's misrepresentations and deceit, did not prescribe under this interpretation of the statute.
However, while Edward has a cause of action which has not prescribed, limits still exist on his ability to challenge an acknowledgment of paternity executed in authentic form. In reviewing this case, we must keep in mind that its issues are imbedded deep within the context of a strong public policy:
It is the announced public policy of this state that innocent children should not be bastardized. This is especially true, we think, when a child has previously been acknowledged by an authentic act whose validity has not been challenged. Furthermore, the state has a valid interest in conservation of its public assistance fund, in preserving the legitimacy of its children, and in insuring a child's welfare. These considerations override the respondent's interest in a court-ordered blood test under the circumstances of this case. See, e.g., In Interest of J.M., 590 So.2d 565 (La.1991). In In Interest of J.M., the supreme court was concerned with the question of what must be established in a paternity suit to trigger court-ordered blood testing. It concluded that the moving party must first show a reasonable possibility of paternity. In our view, that conclusion is equally applicable to a situation where an alleged father is attempting to disavow a minor child. The record discloses that Mr. Lastrapes failed to prove a reasonable possibility of a lack of paternity. He did not establish a prima facie case warranting issuance of a court-ordered blood test under the rationale of In Interest of J.M., supra.

Lastrapes v. Willis, 93-1417 (La.App. 3 Cir. 4/6/94); 635 So.2d 1281, 1282-83, rehearing denied, writ denied, 94-1547 (La.9/30/94); 642 So.2d 871.
Therefore, we remand this case to the trial court for a hearing to determine whether Edward can make a prima facie case of a reasonable possibility of a lack of paternity.

CONCLUSION
Accordingly, the judgment of the trial court is reversed, the exceptions of prescription and of no cause and no right of action *1184 are overruled, and the matter is remanded for further proceedings in accordance with this opinion.
Costs of this appeal are taxed against defendants. All other costs are deferred to the trial court.
REVERSED AND REMANDED.