515 So.2d 769 (1987)
STATE of Louisiana
v.
Jimmy ST. PIERRE.
No. 87-CK-1244.
Supreme Court of Louisiana.
November 30, 1987.
*770 Mark McTernan, McTernan, Parr & Rumage, New Orleans, for respondent.
John Mamoulides, Dist. Atty., Adrian LaPeyronnie, III, Gretna, for applicant.
CALOGERO, Justice.
On June 6, 1984, defendant Jimmy St. Pierre was charged by bill of information with criminal neglect of family under La. Rev.Stat.Ann. 14:74 (West 1986). While he contends that he is not the biological father of the two minor children whom he allegedly failed to support, he did not, at the time he was charged, have the benefit of our later opinion in State v. Jones, 481 So.2d 598, 601 (La.1986), wherein we held that the child support obligation mandated *771 by R.S. 14:74(A)(2) applies only to the biological parent, meaning the person "who begot or brought forth the child...." Defendant contends that he was not then aware that if he was not the biological father of his wife's children he could not be convicted of the crime charged, and consequently he entered a stipulation to pay monthly child support pursuant to R.S. 14:75. At the time he agreed to the stipulation, he was neither Boykinized nor represented by counsel. Later he was found in contempt of court for failure to make monthly payments as required by the stipulation, ordered to resume full support and to pay arrearages, and was sentenced to spend three weekends in parish jail.
The court of appeal, 507 So.2d 837, prompted by this Court's ruling in State v. Broussard, 490 So.2d 273 (La.1986) reversed the contempt conviction on the ground that the defendant was not advised of his Boykin rights before he entered the stipulation of support. However, St. Pierre entered his support stipulation in this case some two years prior to our decision in Broussard. Thus, one of the issues which prompted our writ grant in this case is whether Broussard's extension of Boykin should be given retroactive effect. For reasons hereinafter set forth, we hold that this extension of Boykin applies only in those cases where R.S. 14:75 stipulations either were entered after the effective date of our judgment in Broussard, or were the subject of a direct appeal which was pending on that date. Defendant's pre-Broussard stipulation, which was not the subject of a direct appeal, accordingly should not have been invalidated on Boykin grounds.
Nonetheless, we find that the contempt conviction must be overturned for the reason that the defendant did not have an attorney, and did not waive his right to counsel, at the time he consented to the support stipulation. In Broussard we distinctively held that the right to counsel is applicable in this context, and today we hold that this aspect of Broussard should be given full retroactive application. Therefore, we reverse the defendant's conviction and sentence for contempt, and remand for the entry of a new plea to the criminal neglect of family charge. On remand, the defendant will have the opportunity to defend the charge on the ground that he is not the biological father of the children. We therefore find no need to address defendant's argument in brief that Jones should be given retroactive application.

FACTS AND PROCEEDINGS BELOW
The state filed a bill of information against the defendant in response to an affidavit submitted by his wife, who averred that he had refused to provide support for their two children (ages two and five). The affidavit further stated that the children were in dire and necessitous circumstances.
The offense charged, criminal neglect of family, is defined by statute to include "the desertion or intentional non-support" by a parent of his minor child if that child "is in destitute or necessitous circumstances." La.R.S. 14:74(A)(1)(b). The penalty for the commission of the offense is a fine of not more than $500 and/or imprisonment for not more than six months. R.S. 14:74(D)(1). However, R.S. 14:75(A) provides that in lieu of the imposition of such penalty, the court, with the defendant's consent, may issue an order directing the defendant to make support payments for the child. If the defendant later violates the terms of the court order by not making the required payments, R.S. 14:75(B)(1) provides that he may be found in contempt of court and sentenced to not more than six months in prison.
At his arraignment on June 18, 1984, defendant entered a stipulation pursuant to R.S. 14:75 whereby he agreed to pay child support in the amount of $200 per month and court costs in the amount of $10 per month. The stipulation was entered in open court. Defendant was not represented by counsel at the proceeding. The record does not show, and the parties do not otherwise contend, that the state advised the defendant of his right to counsel or that he knowingly waived that right. Nor was the defendant "Boykinized," i.e., *772 advised pursuant to Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969) of his right to confront the witnesses against him at trial, and of his privilege against self-incrimination. (Boykin also requires that the defendant be advised of his right to a jury trial, but that right was not available here, as the defendant was charged with a misdemeanor offense and faced a maximum jail sentence of only six months.)
In April, 1986, defendant's wife notified the district attorney's office that St. Pierre had made no support payment since December, 1985. The district attorney then filed a contempt rule against St. Pierre, on the ground that he had failed to comply with the 1984 support order. The defendant, by then represented by counsel, responded with a number of pre-trial motions, including a motion to quash the support stipulation (referred to as a "conviction"), a motion for a new trial and a motion to withdraw his consent to the support order (his consent being referred to as a "guilty plea"). Among the contentions raised by these motions were that St. Pierre was not liable for support payments because he was not the biological father of the children, that he was improperly denied access to counsel at the time the stipulation was entered, and that he should have been Boykinized prior to the entry of the consent order.
All of defendant's motions were denied. The juvenile court judge found the defendant in contempt and ordered him to pay $200 per month child support, together with $50 per month for arrearages, by voluntary wage assignment. The court also sentenced him to serve three weekends in the parish jail.
The court of appeal granted defendant's application for supervisory writs, reversed the contempt conviction and ruled that "the case against the defendant must be dismissed." State v. St. Pierre, 507 So.2d 837 (La.App. 5th Cir.1987). The appellate court's reversal was based solely on its correct conclusion that our decision in Broussard requires that the trial judge conduct a Boykin examination of the defendant before any support stipulation is accepted under R.S. 14:75. However, the court of appeal did not expressly discuss whether Broussard, which was decided on June 20, 1986, should apply retroactively to St. Pierre's stipulation, which was entered on June 28, 1984.
Also, because the appellate court rested its decision solely on the Boykin issue, it did not reach the other assignments of error raised by the defendant, including the argument that he was improperly without representation of counsel at his "arraignment." Following the state's timely application for review of the appellate court's ruling, we granted writs. 508 So.2d 808 (La.1987).

ANALYSIS
The state's primary argument to this Court is that our decision in State v. Broussard, 490 So.2d 273 (La.1986) should not be applied retroactively to a consent agreement entered before that case was decided. Before discussing the retroractivity issue, we will first review the facts and holding of Broussard.
(A) The Import of Broussard
Broussard involved facts very similar to this case. The state sought to hold the defendant in contempt for non-compliance with a support stipulation. The defendant was neither Boykinized nor represented by counsel at the time that he agreed to enter the stipulation. The trial judge granted the defendant's motion to quash the contempt rule, finding that defendant's consent to the support order was tantamount to a plea bargain agreement, and that therefore he should have been Boykinized, or at least advised of certain basic rights, such as the right to counsel. See State v. Broussard, 487 So.2d 1261, 1262 (La.App. 3rd Cir.1986). The court of appeal reversed, holding that Boykin and other due process protections which normally are required in criminal proceedings are not applicable when the defendant enters a stipulation of support pursuant to R.S. 14:75. Id. at 1267-69. We reversed, holding in a per curiam opinion that:

*773 After defendant is charged with criminal neglect of family, the provisions of R.S. 14:75, 75.1 and 75.2 come into play. Some of these are necessarily criminal in nature. The defendant is entitled to counsel and if he cannot afford one, counsel must be appointed to represent him. The trial judge shall explain the defendant's rights to him (cf. the customary "Boykin" examination) before any proceeding under 14:75 is initiated.
490 So.2d at 273-74.
We agree with the court of appeal's conclusion here that Broussard requires that a defendant be advised of Boykin protections at the time any stipulation of support is entered under R.S. 14:75. The provisions of that statute are "necessarily criminal in nature," as they establish a means for the resolution of a pending criminal charge which, for reasons discussed below, is analogous to a plea bargaining agreement.
The defendant who is charged with criminal neglect of family faces upon conviction a possible sentence of up to six months in prison. R.S. 14:75 provides that "in lieu of" the trial, a possible finding of guilt and imposition of that penalty, the defendant may consent to a support stipulation. However, after the defendant consents to the support order, he is subject to contempt of court for violating its terms.
The jail sentence for contempt is identical to the potential jail sentence which would be applicable had the defendant not entered the stipulation and had instead been convicted upon trial, i.e., a sentence of not more than six months in prison. Because the entry of the stipulation operates as an implicit admission that the criminal charge has merit (or at least that the defendant will not contest the charge), and because of the resulting risk of imprisonment, a defendant making such a stipulation is essentially entering a plea of guilty to a criminal charge. And, as we indicated in Broussard, a plea of guilty to a criminal offense triggers the protections afforded by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
In Boykin, the United States Supreme Court held that before a defendant enters a plea of guilty to a felony charge, the trial judge should question him and confirm for the record that he has made an express and knowing waiver of his right to a jury trial, his privilege against self-incrimination and his right to confront the witnesses against him. This Court first applied Boykin in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971), and subsequently extended Boykin in State v. Jones, 404 So.2d 1192 (La.1981) to all misdemeanor guilty pleas which could be used as a basis for imprisonment or enhancement of sentence.
Broussard then extended Boykin to support stipulations entered under R.S. 14:75. Prior to Broussard, we had not ruled on whether Boykin was applicable in this context. Thus, the question becomes whether our extension of existing law in Broussard should apply retroactively to support stipulations entered prior to the date of that decision.
(B) Broussard, Boykin and Retroactivity
There is no better place to begin our inquiry into the retroactivity issue than those cases which considered whether Boykin itself should be applied retroactively. When we first applied Boykin, we made clear that its requirements pertained only to those guilty pleas taken after the effective date of the United States Supreme Court's decision in that case. State ex rel. Jackson v. Henderson, 255 So.2d at 90. In Jackson, we also established a "three-right articulation rule" for Boykinization, a rule which we later held should have prospective effect only. State ex rel. LeBlanc v. Henderson, 261 La. 315, 259 So.2d 557 (1972).
When we extended Boykin to misdemeanor cases in State v. Jones, 404 So.2d 1192 (La.1981), we stated that our decision would apply only to those guilty pleas taken after the effective date of Jones, and to cases involving such pleas as were then pending on review before our Court (the latter being referred to as "pipeline" cases). We expressly reaffirmed that *774 Jones was only applicable prospectively, and to pipeline cases, in State v. Moore, 416 So.2d 1298 (La.1982). Our handling of the retroactivity issue in Jackson, LeBlanc, Jones and Moore was consistent with the conclusion of federal courts that Boykin should not apply to guilty pleas entered before its effective date. See e.g., Golden v. Henderson, 456 F.2d 376 (5th Cir.), cert. denied 409 U.S. 861, 93 S.Ct. 149, 34 L.Ed. 2d 323 (1972); Dominguez v. Henderson, 447 F.2d 207 (5th Cir.1971).
The United States Constitution "neither prohibits nor requires" courts to give retrospective application to criminal law decisions. Brown v. Louisiana, 447 U.S. 323, 327, 100 S.Ct. 2214, 2219, 65 L.Ed.2d 159 (1980); Linkletter v. Walker, 381 U.S. 618, 629, 85 S.Ct. 1731, 1737, 14 L.Ed.2d 601 (1965). However, we note that the approach this Court took to the retroactivity issue in Jones and Mooreprospective application only, with the exception of cases pending on direct reviewwas recently adopted by the United States Supreme Court as the proper general rule for this issue. Griffith v. Kentucky,  U.S. , 107 S.Ct. 708, 95 L.Ed.2d 649 (1987).
An exception to the general rule is to vest a criminal decision with full retroactive effect. This exception is applied when the decision in question effects a change in the law which "is designed to overcome an aspect of the criminal trial that substantially impairs its truth-finding function" and thus "raises serious questions about the accuracy of guilty verdicts in past trials...." Brown v. Louisiana, 447 U.S. at 328, 100 S.Ct. at 2219. Stated another way, there should be full retroactivity when the new rule goes "to the fairness of the trialthe very integrity of the fact finding process." Linkletter v. Walker, 381 U.S. at 639, 85 S.Ct. at 1743. See also State v. Liesk, 326 So.2d 871, 876 (La.1976).
Broussard's extension of Boykin to R.S. 14:75which, to repeat, means that the trial court should secure a knowing waiver from the defendant of his privilege against self-incrimination and his right to confront witnesses (the right to a jury trial not being available in this context)does perhaps enhance the truthfinding process there is the possibility that advising the defendant of these rights might prevent uninformed and even unsupported pleas. However, we do not find that this extension of Boykin, as important as it is, is such that it requires us to automatically question the "fairness" and the "integrity of the fact finding process" in all cases where 14:75 stipulations were entered prior to Broussard. We did not conclude that full retroactive application of our previous extensions of Boykin was warranted when we considered the issue in LeBlanc, Jones and Moore, and we have been presented with no argument that persuades us to adopt a different retroactivity rule for stipulations entered under R.S. 14:75. As we noted in Moore:
Refusal to decree retroactive application is particularly logical in a situation ...in which retroactive application would effectively grant "judicial amnesty"... to those ... who previously entered voluntary guilty pleas....
416 So.2d at 1299 n. 2.
Adhering to the procedure employed in Jones and Moore, we find that Broussard's extension of Boykin applies only to R.S. 14:75 stipulations entered after the effective date of that decision, and to appeals challenging such stipulations which were pending on direct review at that time. Therefore, this aspect of Broussard does not require reversal of St. Pierre's stipulation, which was entered prior to the effective date of that case and which was not the subject of a direct appeal, nor his following contempt conviction.
(C) Broussard, The Right To Counsel and Retroactivity
The defendant, however, was not represented by counsel at the time that he consented to the support order. Broussard separately held that a defendant charged under R.S. 14:74 "is entitled to counsel and if he cannot afford one, counsel must be appointed to represent him." This aspect of Broussard must be given full retroactive application.
*775 In Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), the United States Supreme Court ruled that in the absence of a valid waiver, a felony conviction secured in a court that denied the defendant assistance of counsel is invalid. This rule was later recognized as fully retroactive, both by the United States Supreme Court and this Court. Kitchens v. Smith, 401 U.S. 847, 91 S.Ct. 1089, 28 L.Ed.2d 519 (1971); Pickelsimer v. Wainwright, 375 U.S. 2, 84 S.Ct. 80, 11 L.Ed.2d 41 (1963); State v. Bernard, 326 So.2d 332 (La.1976).
The right to counsel was extended by Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) to all misdemeanor convictions which result in imprisonment. Argersinger was also given full retroactive effect. Berry v. City of Cincinnati, 414 U.S. 29, 94 S.Ct. 193, 38 L.Ed.2d 187 (1973).
Following Argersinger, we have repeatedly held that its extension of the right to counsel to misdemeanor cases must be given retroactive effect, such that an uncounseled misdemeanor conviction obtained prior to Argersinger, regardless of whether it resulted in the imposition of a jail sentence, could not be used to subject the same defendant to an enhanced penalty and imprisonment for a subsequent offense. State v. Strange, 308 So.2d 795 (La.1975); City of Monroe v. Fincher, 305 So.2d 108 (La.1974); State v. Guillotte, 297 So.2d 423 (La.1974). Similarly, the defendant's uncounseled entry of the support stipulation in this case cannot be used as a basis to punish him for contempt under R.S. 14:75.
The rationale for giving retroactive effect to judicial extensions of the right to counsel is not difficult to discern. The United States Supreme Court has concluded that an uncounseled conviction lacks reliability because of the "fundamental fact that a layman, no matter how intelligent" cannot possibly "further his claims of innocence and violation of previously declared rights adequately." Linkletter v. Walker, 381 U.S. at 639 n. 20, 85 S.Ct. at 1743 n. 20. Thus, a defendant's right to counsel is applied retroactively because it impacts upon "the fairness of the trialthe very integrity of the fact finding process." Id. at 639, 85 S.Ct. at 1743.
In this case, for example, the defendant argues that he was unaware that he had the right to contest the criminal charge by alleging that he was not the biological father of the children in question. Although the validity of that defense to the criminal neglect of family charge was not recognized by this Court until after this defendant's stipulation was entered, see, State v. Jones, 481 So.2d 598 (La.1986), consultation with a lawyer on that issue, as well as on other matters, might well have caused St. Pierre to contest the charge rather than to submit to the support order.
As held in Broussard, a defendant charged under R.S. 14:74 should be advised of his right to counsel, and if he desires but cannot afford an attorney, one must be appointed to represent him. Any waiver of those rights must be knowing and voluntary, and duly evidenced in the record. These fundamental constitutional rights apply to defendant, even though his stipulation was entered before the date of our decision in Broussard.

DISPOSITION
The June 28, 1984 stipulation, entered by the defendant without the advice of counsel, must be overturned. The contempt conviction and sentence which stemmed from defendant's failure to comply with the terms of the stipulation will also be vacated.
However, we amend the judgment of the court of appeal and clarify the disposition of the case. The court of appeal dismissed the case against defendant. While the contempt proceeding must be dismissed, there is no reason to dismiss the pending charge of criminal neglect of family. Instead we place the defendant in the position he was in prior to the entry of the stipulation, by remanding for the entry of a new plea to the charge of criminal neglect of family. The appropriate remedy where the defendant has been deprived of his right to counsel is remand for a new trial, not dismissal of the prosecution. See, e.g., State v. Brazile, *776 226 La. 254, 267, 75 So.2d 856, 861 (La.1954).
Defendant argues that further prosecution of the criminal neglect charge is time barred by virtue of La.Code Crim. Proc. art. 578(3) (West 1981), because the state has failed to bring the defendant to trial within one year of the date that the prosecution was instituted. We disagree. The entry of the stipulation, even though it was ultimately found to be invalid, interrupted the time period for bringing the defendant to trial. See State v. Ames, 249 La. 685, 190 So.2d 223 (La.1966) (guilty plea that is later overturned on constitutional grounds interrupts time period for bringing the defendant to trial).

Decree
The judgment of the court of appeal is affirmed insofar as it effectively dismissed the state's rule for contempt, the contempt conviction and the penalty imposed. Rather than dismiss the prosecution for violation of R.S. 14:74, however, we vacate the stipulation of June 28, 1984 and remand the case to the juvenile court for further proceedings.
JUDGMENT OF COURT OF APPEAL AFFIRMED IN PART, REMANDED TO JUVENILE COURT.
LEMMON, J., concurs, agreeing that a stipulation pursuant to La.R.S. 14:75 without counsel or waiver of counsel must be set aside, but declining to join in the dicta regarding relator's Boykin complaint.
COLE, J., concurs. Although I dissented in Broussard, and still believe it to be in error, I find it dictates the result reached in this case.