JiCIACCIO, Judge.
This appeal involves thirty-four consolidated cases[1] that originated in Orleans Parish Juvenile Court. Defendants/appellants appeal the juvenile court’s judgment which dismissed contempt rules against them for failure to pay child support in accordance with consent orders of support, but provided that those support orders, which the defendants had stipulated to without advice of counsel, would remain in full force and effect. For the following reasons, we affirm.
FACTS AND PROCEDURAL HISTORY:
These consolidated appeals stem from two earlier appeals, State v. Thomas, 579 So.2d 1086 (La.App. 4 Cir.), writ denied, 586 So.2d 535 (La.1991), and State v. Veal, 579 So.2d 486 (La.App. 4 Cir.), writ denied, 582 So.2d 1308 (La.1991). A brief history of those two cases is necessary to undérstand the posture of the current consolidated appeals.
RThe State filed bills of information in 1976 and 1984, charging Andrew Thomas and Felters Veal, III, respectively, -with criminal neglect of family, under La.Rev.Stat. 14:74. With the defendant’s consent, the juvenile court entered an order of support in each ease pursuant to La.Rev.Stat. 14:75, which provides for such consent judgments in lieu of the imposition of punishment for criminal neglect of family. Each defendant failed to pay the child support provided for in the consent judgment, and each subsequently was ruled into court on contempt charges. At each contempt hearing, the juvenile judge noted that the minute entry for the date of the initial proceeding did not reflect that the defendant had been advised of his right to counsel. Each defendant filed a motion to dismiss both the support order entered into at the initial proceeding, and the contempt charges. Before dismissing the cases, the trial judge ordered that the clerk of court search for the transcripts of the initial proceedings. A transcript of Felton Veal’s initial proceeding was found. It reflected that Mr. Veal had been fully advised of his right to counsel.- However, the clerk was not able to find a transcript of Mr. Thomas’ initial proceeding.
The court, therefore, ordered a full eviden-tiary hearing in order to determine if Mr. Thomas had been advised of his right to counsel. At that hearing on February 16, 1990, the juvenile judge who had presided over the original proceeding and his deputy clerk testified that all defendants charged with criminal neglect of family routinely were advised of their right to counsel. On May 3, 1990, the court rendered judgment in open court dismissing the original consent judgment and the contempt charge as to both Mr. Thomas and Mr. Veal.
The State appealed both dismissals. Before the appeals were decided the juvenile court, of its own accord, identified sixty-four other cases in which consent lajudgments of support under La.Rev.Stat. 14:75 were entered under circumstances similar to those found to exist in Thomas and Veal. Thirty-four of the cases identified are considered in this appeal.
In State v. Thomas, supra, this Court affirmed the dismissal of the entire case based on the factual finding that Mr. Thomas had not been advised of his right to counsel, a right to which he was entitled under the Louisiana Supreme Court’s ruling in State v. St. Pierre, 515 So.2d 769 (La.1987). However, because the transcript established that Mr. Veal had been advised of and waived his right to counsel, the Court reversed the dismissal in State v. Veal, supra, and remanded for contempt proceedings.
While the appeals in Thomas and Veal were pending, the State, with the trial court’s approval, filed civil Petitions for Child Support pursuant to La. R.S. 46:236 et seq. (un *1077 der this statute, the State shall establish programs to enforce and collect support in Aid to Families with Dependent Children cases by obtaining support orders, to locate absent parents and to establish paternity) into the records of those of the sixty-four cases earlier identified in which there remained minor children. The civil petitions requested that support be set in an amount at least equal to the amount of support originally provided for in the original order of support pursuant to La.Rev.Stat. 14:75 A.
After this Court rendered its opinions in Thomas and Veal, the State requested that the juvenile court reconsider its May 3,1990 ruling. In response to this request the court ordered a search for transcripts of the initial proceedings for the sixty-four original defendants. Only four transcripts were located. Three of the transcripts established that the defendant had been advised of his right to |4counseI, but the remaining transcript disclosed that the defendant had not been advised of this right.
On February 24, 1995, the juvenile court signed the judgment that is the subject of this appeal. That judgment dismissed the contempt rules pending against the defendants based on La.Rev.Stat. 14:75 B, but provided that the original support orders would remain in full force and effect, except that the defendants could not be subject to any future contempt'proceedings based on those orders. The judgment recognized that the case was “quasi-civil in nature,” and granted the State the right to obtain money judgments against each defendant in civil proceedings. The judgment also reserved to the defendants the right to contest paternity,' and to plead prescription as provided in La. Civ.Code art. 3497.1. Finally, the judgment ordered the District Attorney to provide the Clerk of Court with the current address of each defendant, and ordered the Clerk to serve each defendant, at the address provided, with a copy of the judgment and the attached per curiam.
It is from this judgment that defendants now appeal. Thirty-nine briefs on behalf of appellants were filed with this Court along with a Motion to Consolidate. Five of those cases have been dismissed on motion of the appellant. The remaining individual appellants are:
1) Robert Bourgeois — found guilty as charged at his arraignment on 7/26/79. His record contains a transcript that does not indicate he was advised of his right to counsel. No civil petition for support was filed by the State.
2) Charlie Cammon — found guilty as charged at his arraignment on 2/8/80. ‘ A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
3) John Curley, Sr. — found guilty as charged at his arraignment on 7/24/75. A transcript of the initial proceeding was not located. No civil petition for support was filed by the State.
Is4) Ray Denny, Sr. — pleaded guilty as charged at his arraignment on 6/14/79. A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
5) Rogers Lee Dorsey — consented to a support order at his arraignment on 10/26/78. A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
6) George Dupard, Sr. — pleaded guilty as charged at his arraignment on 8/21/80. A transcript of the initial proceeding was not found. No civil petition for support is contained in the record.[2]
7) Darnell Ellis, Sr. — pleaded guilty as charged at his arraignment on 1/23/81. A transcript of the initial proceeding was not found. No civil petition for support is contained in the record.[3]
8) Brent Fauria — found guilty as charged at his arraignment on 7/7/78. A transcript of the initial proceeding was not found. A *1078 civil petition for support was filed by the State.
9) Claudius Fincher — found guilty as charged at his arraignment on 5/30/80. A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
10) Lionel Foster — pleaded guilty as charged at his arraignment on 11/13/80. A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
11) Percy Green — found guilty as charged at his arraignment on 10/25/73. A transcript of the initial proceeding was not located. No civil petition for support was filed by the State.
12) Harry Harris — pleaded guilty as charged at his arraignment on 3/16/78. A transcript of the initial proceeding was not located. No civil petition for support is contained in the record.[4]
13) Kermit Henry, Sr. — found guilty as charged at his arraignment on 4/27/79. A transcript of the initial proceeding was not located. No civil petition for support was filed by the State.
1614) Williams Holmes, Sr. — found guilty as charged at his arraignment on 1/16/81. A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
15) Donald Ivey — consented to a support order at his arraignment on 12/1/78. A transcript of the initial proceeding was not located, ' A civil petition for support was filed by the State.
16) Kenneth Jackson, Sr. — consented to a support order at his arraignment on 12/3/81. A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
17) Gerald Jones — found guilty as charged at his arraignment on 7/3/75. A transcript of the initial proceeding was not located. No civil petition for support was filed in this case.
18) Bobby Kelly — found guilty as charged at his arraignment on 6/1/79. A transcript of the initial proceeding was not located. A civil petition for support was filed in this case.
19) Barry Knox — pleaded guilty as charged at his arraignment on 10/11/79. A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
20) John Leone — found guilty as charged at his arraignment on 4/11/74. A transcript of the initial proceeding was not located. A civil petition for support was not filed in this case.
21) Ernest Lewis — found guilty as charged at his arraignment on 11/2/78. A •transcript of the initial proceeding was not located. No civil petition for support is contained in the record.[5]
22) Dennis Matthew — consented to a support order at his arraignment on 6/17/77. A transcript of the initial proceeding was not located. No civil petition was filed in this case.
23) Percy Matthews, Jr. — consented to a support order at his arraignment on 2/9/79. A transcript of the initial proceeding was not located. A civil petition for support is contained in this record.[6]
24) Anthony Morgan — pleaded guilty as charged at his arraignment on 11/8/79. A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
1725) Martin Nelson — found guilty as charged at his arraignment on 2/22/79. A transcript of the initial proceeding was not located. No civil petition for support is contained in the record.[7]
*1079 26) Willie Gary Pitt, Sr. — found guilty as charged at his arraignment on 8/10/79. A transcript of the initial proceeding is contained in the record, but it does not indicate that Mr. Pitt was advised of his right to counsel. A civil petition for support was filed by the State.
27) Charles Reimonenq — pleaded guilty as charged at his arraignment on 1/29/81. A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
28) Lawrence Robair — consented to a support order at his arraignment on 6/26/80. A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
29) Reginald Shields — found guilty as charged at his arraignment on 12/4/80. A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
30) Otis Sinegar — pleaded guilty as charged at his arraignment on 2/20/81. A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
31) Charles Smith — consented to a support order at his arraignment on 8/14/80. A transcript of the initial proceeding was not located. A civil petition for support was filed by the State.
32) Elton Tapp — pleaded guilty as charged at his arraignment on 9/17/81. A transcript of the initial proceeding was not located, however, the minute entry for the date of arraignment indicates that Mr. Tapp was Boykinized. It does not say he was advised of his right to counsel. A civil petition for support was filed by the State.
33) Edgar Westbrook — found guilty as charged at his arraignment on 7/6/78. A transcript of the initial proceeding was not located. No civil petition- for support was filed in this ease.[8]
34) Willie Wilson — found guilty as charged at his arraignment on 2/1/79. A transcript of the initial proceeding was not located. No civil petition for support was filed in this case.

\JLAW AND ANALYSIS:

This Court has long recognized the “hybrid” nature of juvenile courts and their involvement with child support proceedings. In State v. Smith, 492 So.2d 1272, 1274, we found that a support judgment entered pursuant to LSA-R.S. 14:75 has civil rather than criminal implications. This court in Smith distinguished between child support orders entered pursuant to LSA-R.S. 14:74 and those entered pursuant to R.S. 14:75. Under R.S. 14:75, a court may issue a support order in lieu of the institution of criminal proceedings with the defendant’s consent.
In State v. Thomas, 579 So.2d 1086 (La.App. 4th Cir.1991), this Court stated:
Juvenile law is a hybrid of civil and criminal law. State v. Smith, 492 So.2d 1272 (La.App. 4th Cir.1986). The juvenile court operates differently from the criminal court’s procedure as its primary aim is to effectuate whatever action which would be in the “best interest” of the child or children involved. In furtherance of this objective, the court is given greater leeway to accomplish its goals.
In State v. Veal, 579 So.2d 486, 487, this Court stated:
Given the fact that no possibility of imprisonment arises from the support agreement itself, State v. Creamer, 528 So.2d 667 (La. App. 2nd Cir.1988), that the support agreement is an alternative to a criminal proceeding, and that it is within the rarefied, hydrid jurisdiction of the juvenile court, it would appear that R.S. 14:75, et seq., is quasi-civil in nature.
In State in Interest of Lewis, 609 So.2d 918 (La.App. 4th Cir.1992), this Court followed the holding in Smith> and held that civil rather than criminal law is applicable to R.S. 14:75 proceedings. The court in Lems held that a R.S. 14:75 consent judgment entered in lieu of criminal prosecution has the effect of a civil |9contract between the parties. See *1080 also, State v. Lott, 615 So.2d 452 (La.App. 4 Cir.1993).
In support of their position that criminal law is applicable in this case, appellants rely on a per curiam decision rendered in State v. Broussard, 490 So.2d 273 (La.1986), wherein the Louisiana Supreme Court found that a defendant charged with criminal neglect of family is subject to the provisions of La.Rev.Stat. 14:75, La.Rev.Stat. 14:75.1 and La.Rev.Stat. 14:75.2, and that some of these provisions are criminal in nature. The Court held, therefore, that such a defendant is entitled to counsel, and this right must be explained to him, as in the customary “Boykin” examination, before any contempt proceeding under La.Rev.Stat. 14:75 can be initiated. Appellants also rely on State v. St. Pierre, 515 So.2d 769 (La.1987), wherein the Court held that the right to counsel aspect of Broussard would be given full retroactive application. Consequently, accordingly to St Pierre, uncounselled entries of support stipulations could not be used as a basis to punish a defendant for contempt under La.Rev.Stat. 14:75 B.
Relying on the pronouncement in St. Pierre, the juvenile court below reversed its earlier judgment which dismissed the entire prosecution and dismissed only the contempt rules. Rather than ordering new trials, as was done in St. Pierre, the judgment provided that the original consent orders would remain in full force and effect and could be used to obtain money judgments against the defendants, except they could not be used to subject the defendants to future contempt proceedings. The judgment also reserved to thé defendants the right to contest paternity and to plead prescription as provided in article 3497.1 of the Civil Code.
| ipThe appellants contend that the trial court erred when it ordered that the original consent support orders were to remain in effect, and that these orders could be used to obtain a money judgment against them. They argue that the court was required to vacate the consent judgments and order new trials on the criminal neglect charges as was done in St. Pierre. We disagree.
In a per curiam the court explained that its earlier decision dismissing the criminal neglect charges against the defendants was not consistent with the Supreme Court’s decision in St. Pierre, which held that the appropriate remedy where a defendant has been deprived of his right to counsel is remand for a new trial, not dismissal of the prosecution. St. Pierre, 515 So.2d at 775. The court further recognized that the children and their custodians, who had been the beneficiaries of the support agreements, would forfeit significant support if the orders were set aside and the criminal neglect charges retried. The court also recognized that no man should be condemned to support a child who is not his own, either biologically or by adoption. Faced with these competing interests, the court then crafted an equitable remedy that it found to be consistent with the “hybrid” nature of La.Rev.Stat. 14:75,' and best protected the competing constitutional interests: it removed any possibility that the original stipulations by the defendants could subject them to criminal sanctions and reserved the defendant’s right to object to the support orders either because they were not legally obligated to support the children or because the right to collect such support had prescribed.
We agree with the reasoning of the trial court in this case. Although appellants were originally charged with criminal neglect of family pursuant to LSA-R.S. 14:74, they were allowed to enter into a stipulation pursuant to [LSA-nR.S. 14:75 — in ■ lieu of the criminal prosecution. LSA-R.S. 14:75 has been found to be quasi-civil in nature, and we find that the statute has civil rather than criminal implications in the present case. The trial court’s judgment removed any possibility that the district attorney could bring contempt charges against appellants for failure to pay arrearages owed as a result of the original support orders. The original support orders which-the trial court held are to remain in effect subject appellants to no greater penalty than those which may be imposed by orders obtained as a result of civil petitions brought pursuant to La. R.S. 46:236.1. The hybrid nature of the juvenile court allows for more leeway for the court to accomplish its goals, and under the facts of *1081 the present ease, we fail to find that any of appellants have been prejudiced by the judgment of the juvenile court..
Further, we find that the holdings of the Supreme Court in Broussard and St. Pierre are factually distinguishable -from the present case. In St Pierre, the defendant pled guilty to criminal neglect, and was actually imprisoned pursuant to a hearing for contempt for failure to comply with the support agreement which was ordered by the court. In Brous-sard, the State had issued a rule for contempt which included the possibility of incarceration, and the Court held that the right to counsel must be given before any contempt proceedings could be initiated. In the present ease, there is no possibility of imprisonment as the juvenile court dismissed all contempt rules brought by the district attorney and refused to incarcerate any of the defendants. Thus, the reasoning of these cases is not applicable here.
For the reasons stated, we find that the juvenile court did not err in refusing to vacate the stipulations entered and remand for new trials. In light of the fact that these proceedings are quasi-civil in nature, and based on the important goaljigof these juvenile court proceedings in serving the best interests of the children involved, we find that the trial court was correct in allowing the original consent support orders to remain in effect. Accordingly, the judgment of the trial court is affirmed.

AFFIRMED.

MURRAY, J., dissents and assigns reasons.

. Five of the original thirty-nine appeals have been dismissed in this court.

. Although no petition is in the record, an answer to a petition, and various motions are contained therein.

. Although no petition is in the record, the State's brief indicates that one was indeed filed in this case. The record does not contain an answer.

. Although no petition is in the record, the State’s brief indicates that one was indeed filed in this case. The record does not contain an answer.

. Although no petition is in the record, the State's brief indicates that one was indeed filed in this case. The record does not contain an answer.

. The State's brief states that no petition was filed in this case. An answer and various motions are in the record.

. Although no petition is in the record, the State's brief indicates that one was indeed filed in this case. The record does not contain an answer.

. In Vol. 2 of 2, p. 12 of the State v. Alexis record, defense counsel indicates that he is not filing an appeal for this defendant because he waived his right to counsel at the initial proceeding. However, the minute entry for the initial proceeding does not substantiate that fact.