389 So.2d 1302 (1980)
STATE of Louisiana
v.
Alexander JOHNSON, Jr.
No. 66151.
Supreme Court of Louisiana.
October 6, 1980.
Rehearing Denied November 10, 1980.
*1303 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
Max Zelden, Zelden & Zelden, New Orleans, for defendant-appellant.
CALOGERO, Justice.
Alexander Johnson, Jr. was charged with aggravated burglary (R.S. 14:60). After waiving trial by jury, he was found guilty by the trial judge and sentenced to nine years at hard labor with credit for time served.[1] His appeal presents six arguments relative to eight of his nine assignments of error.[2]
At approximately 4:30 a.m. on January 6, 1979, James Jackson, a 52 year old male, *1304 was asleep in bed in his one room apartment located at 3333½ Washington Avenue in New Orleans, when two men broke into his apartment. The defendant Johnson beat Jackson in the head with a metal bar and the two men stole his wallet and forty-eight dollars. Jackson called the police, and he described to them the men who had robbed him.
The next day Jackson saw Leroy Solomon at Church's Fried Chicken on Washington Avenue and South Galvez Street. After Jackson told Leroy about what had happened, Leroy told him that he knew the individuals who broke into his apartment. However, he did not name them. Apparently Alexander Johnson, Jr. and Alvin Breaux were staying at Leroy's apartment because they were going to help him move. Before he saw Jackson at Church's Fried Chicken, Leroy had overheard Alexander Johnson say that he and two other men broke into an apartment while the victim was in bed.
Later that day, someone yelled for Jackson to come downstairs to Melvina's Bar, over which Jackson lived. This unknown individual told him that the men who robbed him were in the bar. Jackson went inside the barroom and told the barmaid to give the two some beer on him, while he went to call the police. When the police arrived, Jackson pointed out the defendant, Alexander Johnson, and Alvin Breaux.
Breaux pled guilty to this burglary and testified for the state, placing the bar in the hands of defendant in the assault on Jackson.

ASSIGNMENT OF ERROR NO. 1
By this assignment, defendant argues that the trial court erred in denying Jasper Pharr's oral motion to withdraw as attorney of record.[3] Personal difficulties between the defendant and his counsel are cited as the reasons for the proposed withdrawal. The defendant also complains of the judge's failure to hear evidence tending to establish this supposed conflict.
While a defendant's right to the counsel of his choice is firmly established in our law, that right may not be used to obstruct the orderly procedure in our courts nor to interfere with the fair administration of justice, and this Court has long so ruled: State v. Lee, 364 So.2d 1024 (La.1978); State v. Anthony, 347 So.2d 483 (La.1977); State v. Frezal, 278 So.2d 64 (La.1973); State v. St. Amand, 274 So.2d 179 (La.1973). Alexander Johnson picked the very morning of trial to express his displeasure with and attempt at discharge of his lawyer. The record does not reflect any express offering of substitute counsel by the defendant or any proposal for seeking such other counsel. In State v. Lee, supra this Court pronounced rules dispositive of the question:
"... The right of defendant to counsel of his choice must be exercised at a reasonable time, in a reasonable manner, and at an appropriate stage within the procedural framework of the criminal justice system of which it is a part. State v. Dickerson, 353 So.2d 262 (La.1977); State v. Cousin, 307 So.2d 326 (La.1975); State v. St. Amand, supra. Once the day of trial arrives, the question of substitution of counsel rests largely within the discretion of the trial judge. See State v. St. Amand, supra; State v. Austin, 258 La. 273, 246 So.2d 12 (1971). The granting or refusal of a motion for a continuance rests within the sound discretion of the trial judge and his ruling will not be disturbed on appeal absent a clear showing of abuse of discretion. La.Code Crim.P. art. 712; State v. Adams, 347 So.2d 195 (La.1977)."
As stated, the decision to permit the withdrawal of counsel at such a late date in the proceedings is reserved to the trial judge in his discretion; the defendant so concedes. The judge was of the belief that the motion was calculated merely to delay the start of trial. This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
By this assignment, it is asserted that reversible error took place when the trial court permitted the defendant to *1305 waive trial by jury, that the waiver was not made knowingly and intelligently. The validity of the defendant's waiver becomes evident from the following colloquy appearing in the record:
"BY THE COURT:
Alright then, the case has to go to trial. I think the Supreme Court will uphold me. Now, let me tell the defendant-Mr. Pharr, you intimated to the court that this defendant may want to waive the jury. It's immaterial with the Court and I inform the defendant that he had a right to waive the jury and be tried by the judge. You also have a right to be tried by the jury. Let me ask you the question: Do you want a judge trial or do you want a jury trial?
"BY THE DEFENDANT:
Judge.
"BY THE COURT:
You want to waive the jury; is that correct?
"BY THE DEFENDANT:
Yes, sir."
It must be noted that the defendant's counsel, against whom no claim of incompetence has been suggested, was present at the waiver. The record also bears witness to the facts that the defendant's options were presented to him by the trial judge, as is required by C.Cr.P. art. 780, and that the defendant stated his election to waive jury trial not once but twice, clearly and unequivocally. Greater proof of knowing and intelligent waiver has been neither constitutionally nor jurisprudentially required. See State v. Muller, 351 So.2d 143 (La.1977). Accordingly, the second assignment of error lacks merit.

ASSIGNMENT OF ERROR NO. 3
Here, the defendant assigns error to the trial judge's extensive examination of witnesses by way of leading questions, and to the judge's elicitation of what is alleged to be hearsay testimony. Initially, this Court is not at liberty to consider the correctness of the trial court's actions in light of the fact that the defendant failed to raise contemporaneous objection. "An irregularity of error cannot be availed of after verdict unless it was objected to at the time of occurrence." C.Cr.P. art. 841. On the contrary, the record reveals that counsel for the defense specifically acquiesced in the judge's examination of witnesses.
The actions of the trial court can be justified, regardless of the defendant's failure to object. Being the lone trier of fact, the judge was merely trying to clarify issues in his mind which had been befuddled by cryptic testimony. This Court, in State v. Layssard, 310 So.2d 107 (La.1975) stated that:
"Where the judge is the trier of fact he has the right to question the witness to clarify the evidence in his mind. Unless his participation in the trial is to such an extent and of such a nature that it deprives the defendant of a fair trial, there is no error."
Additionally, it should be noted that the bulk of the court's questioning was aimed at the elucidation of issues, the confusion of which might as easily have worked to defendant's detriment as to his advantage. It was in this context that most of the alleged hearsay testimony was elicited. At page 62 of the record, the following exchange took place:
"BY THE COURT:
Now, at that time, after the police arrived there and you say you told the police that the man on trial here today, Johnson, was one of those fellows, did Leroy-at that time now-did Leroy or anybody else tell you, `say, listen, Jackson, you better identify him.' or `that's the guy that did it,' or did you do that on your own steam?
"BY THE WITNESS:
No, Leroy's the one who told me that's who it was."
A close examination of the transcript reveals that this testimony is not hearsay at all. Obviously, the court's purpose in prompting the admission of this out-of-court statement was to ascertain whether the witness had identified the defendant from his own memory of the beating or only as a result of Leroy Solomon's influence. Since the judge was concerned *1306 only with the actual occurrence vel non of Solomon's utterance, and not with the truthfulness thereof, the statement was admissible; it was not barred by the hearsay rule. Pugh, Louisiana Evidence Law, 396, 412 (1st ed., 1974).
Regardless of the nature of the evidence in question, this Court has long held that the admission of even hearsay testimony is harmless error where the effect is merely cumulative or corroborative of other testimony adduced at trial. State v. Mclntyre, 381 So.2d 408, 411 (La.1980). The fact that Leroy Solomon had informed the victim of the defendant's identity is established in the record independently of the statement objected to by the defense. Accordingly, this assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 4, 5, 6, 7 AND 9
The remaining assignments of error, numbers four, five, six, seven, and nine, which deal with various post-trial motions, are likewise without merit. The allegation that the trial court erred in allowing the defendant to waive the legal pre-sentence delays cannot be supported in the total absence of any indication from the record that counsel's waiver of these delays was without the knowledge and consent of the defendant. The trial judge's denial of the defendant's motion for new trial was justified due to the tardiness of the request, C.Cr.P. art. 853 (no "newly discovered" evidence was offered), and due to the lack of grounds therefor, C.Cr.P. art. 851. The denial of the motion to amend the sentence was, by law, totally within the court's discretion, C.Cr.P. art. 881. The judge's refusal to allow the defense "leave to take a note of evidence",[4] was likewise a discretionary decision, which we are not inclined to disturb. There is no procedural vehicle or right in defendant in this regard of which we are aware or to which our attention has been directed.[5] And finally, the defendant asserts that C.Cr.P. art. 876[6] requires the trial judge to order a post-sentence investigation where none was had prior to sentencing. It must be noted that the state of the record before us reflects neither the fact that such an investigation has failed to take place nor the defendant's objection to the judge's complained of failure to act. Moreover, we are not prepared to say that the absence of a required post-sentence investigation is a proper matter for complaint to this Court in the review of defendant's conviction and sentence. Defendant's remedy lies first with the division of probation and parole supervision and/or with the trial judge.

Decree
For the reasons set out above, the verdict and sentence of the trial court are affirmed.
AFFIRMED.
NOTES
[1] The maximum penalty for violation of R.S. 14:60 is thirty years.
[2] Assignment of error number eight was neither briefed nor argued before this Court; hence, it is considered to have been abandoned. State v. Sterling, 377 So.2d 58 (La.1979); State v. Johnson, 372 So.2d 1217 (La.1979).
[3] Jasper Pharr was defendant's privately retained counsel.
[4] In an effort to preserve evidence for appeal pertaining to the court's denial of counsel's outset motion to withdraw, defendant on the occasion that he sought various post-sentence relief asked "leave to take a note of evidence" relating to the defendant's problems with his original counsel.
[5] Absent the note of evidence, defendant's reason for conflict with his original counsel is not before us. However, at oral argument, it was related to this Court that the difference stemmed from the attorney's alleged insistence that defendant plead guilty.
[6] C.Cr.P. art. 876 provides:

"If a court has not ordered a presentence investigation in a felony case and has imposed a sentence of one year or more, the division of probation and parole supervision shall make a post-sentence investigation and report within sixty days from the date the sentence is imposed. The post-sentence investigation report shall be delivered to the sentencing judge and to the district attorney in order that each may supplement it with such comments as he deems appropriate. The report shall then be forwarded to the officer in charge of the penal or correctional institution in which the convicted person is incarcerated and shall become a part of the records pertaining to that person. If the convicted person has been placed on probation, the report shall be kept as part of his probation record."