LINDSAY, Judge.
This case is before this court to review the trial court’s denial of motions to quash filed in three separate cases. The three defendants, Quincy B. Scott, Billy A. Out-ley and James W. Clark, entered into stipulations with the district attorney for Oua-chita Parish under the provisions of LSA-R.S. 14:75.2, copies of which are attached to this opinion as appendices. In these stipulations the defendants admitted paternity of a child or children and agreed to the payment of child support. The stipulations acknowledged that the court would have the power to issue an order of support under the provisions of LSA-R.S. 14:75 and subjected each defendant to the contempt and criminal penalty provisions of LSA-R.S. 14:75 in the event of his failure to pay the amount of support agreed upon.
The factual background of each case is similar. Each defendant appeared at the District Attorney’s Office and, without counsel, signed a stipulation under LSA-R.S. 14:75.2 requiring that child support payments be made to the Department of Health and Human Resources. Scott signed his stipulation on April 9,1986; Out-ley on February 17, 1985 and Clark on July 13, 1985. Pursuant thereto, consent judgments were rendered against each defendant under LSA-R.S. 14:75. Each defendant became delinquent, which resulted in a petition for contempt of court being filed. Scott and Outley were found guilty of contempt and sentenced. Sentence was suspended and both were placed on probation subject to the condition that child support payments be made. When Scott and Out-ley became delinquent, the state filed motions to revoke their probation. When Scott and Outley initially appeared before *103 the trial court pursuant to the state’s motion to revoke their probation, they were found to be indigent and an attorney was appointed to represent them. When Clark appeared before the court in response to the state’s petition for contempt he was found to be indigent and an attorney was appointed for him at that time. The same attorney was appointed to represent all three defendants.
Pursuant to his appointment, defense counsel filed a motion to quash the petition for contempt of court against Clark and the petition to revoke the probation of Scott and Outley. The defendants contended in their motions to quash that the proceedings against them should be dismissed because they were not advised by the court of their constitutional rights, including their right to counsel, before signing the stipulation and because no transcript of a colloquy between the court and defendants was made. Basically, the defendants contended that they should have been Boykinized by the trial court when they signed the stipulation under LSA-R.S. 14:75.2.
The trial court denied the defendants’ motions to quash. The trial court held that although criminal sanctions could not be levied against the defendants, the stipulations were subject to civil enforcement under the court’s contempt powers. The defendants then sought writs of review from this court. The state also applied for writs, complaining of the trial court ruling disallowing criminal sanctions. We ordered the entire record of each case filed with this court.
For the following reasons, we hold that the defendant’s motions to quash must be overruled and the case against each defendant remanded for further proceedings. The trial court judgment prohibiting the state from proceeding under LSA-R.S. 14:75 to enforce the stipulations and subsequent consent judgments is reversed and set aside and the state’s writ application is, accordingly, granted and made peremptory.
The record reflects that the defendants entered into stipulations under LSA-R.S. 14:75.2, which provides that “in cases in which the responsible parent or other person owing a duty of support and the district attorney stipulate to an order of support, the court shall have the power to issue an order of support under the provisions of R.S. 14:75 without the necessity of instituting criminal proceedings under the provisions of R.S. 14:74.” Here, the defendants were not arrested, nor were criminal proceedings instituted against them under the provisions of LSA-R.S. 14:74.
LSA-R.S. 14:75 allows the trial court to issue a support order, instead of imposing punishment, directing the defendant to pay a certain sum to the custodian of the child or to the Louisiana Department of Health and Human Resources. If the defendant violates the terms of the court order, the court may direct the defendant to appear and show cause why he or she should not be found in contempt of court for failure to pay. If found in contempt of court, the defendant may be punished by a sentence of imprisonment for not more than six months, subject to suspension or probation under LSA-R.S. 15:305, and a fine not in excess of $100. Additionally, the trial court may order the defendant to pay the total amount of unpaid support within a specified period of time. If the defendant should fail to pay within the allotted time, he may be imprisoned for not more than six months.
In the instant case, the defendants claim, as did the defendant in State v. Broussard, discussed hereafter, that before entering into a stipulation under LSA-R.S. 14:75.2, they should have appeared before a judge and been advised of their rights pursuant to Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969), i.e., they should have been “Boykinized.” They further contend that a contemporaneous record of their colloquy with the judge should have been made and preserved.
Similar issues have previously been presented to the Louisiana Supreme Court and the Third Circuit Court of Appeal. In an unpublished opinion, State v. Brous- *104 sard, No. K-84-1092, the Third Circuit Court of Appeal reversed the granting by a trial court of a motion to quash when the defendant was ordered to appear in court on a rule for contempt for failure to pay child support in accordance with a stipulation which he had previously signed pursuant to LSA-R.S. 14:75.2. In State v. Broussard, 465 So.2d 727 (La.1985), the Louisiana Supreme Court vacated the ruling of the Court of Appeal and remanded for briefing, argument and opinion.
In response to the Louisiana Supreme Court’s order, the Third Circuit issued its opinion in State v. Broussard, 474 So.2d 549 (La.App. 3rd Cir.1985). The court’s opinion reveals that Mr. Broussard had been charged by bill of information and then arrested for the non-support of his minor children in violation of LSA-R.S. 14:74. Following his arrest, he met with an assistant district attorney. After being informed of his civil and criminal rights, he signed a written stipulation in accordance with LSA-R.S. 14:75.2. Pursuant thereto, a consent judgment was rendered. After Mr. Broussard became delinquent in his payments, the trial court ordered him to show cause why he should not be held in contempt for failure to pay. Mr. Brous-sard filed a motion to quash, contending that certain constitutional rights should have been explained to him by the court and the explanation and subsequent stipulation should have been contemporaneously recorded; in essence, a “Boykinization.” The motion to quash was granted by the trial court and the State sought writs.
The Third Circuit reversed the ruling of the trial court and remanded. The court based its decision on procedural grounds. The court held that the proceeding was civil in nature, rather than criminal. Since the contempt proceeding was civil in nature and a motion to quash is a criminal remedy, the motion to quash was not the proper procedural device to attack a rule for civil contempt. The Third Circuit reasoned that the contempt proceeding was civil in nature because the court’s motive was to coerce the defendant into obeying the order and not to punish. Although Mr. Broussard was charged with non-support and arrested, he voluntarily entered into the stipulation agreement. The agreement was not a plea bargain as the defendant was not found guilty of any crime. The consent judgment was a civil judgment recognizing the agreement between the parties. Since a civil judgment was involved, a motion to quash was not the proper procedural device to attack the judgment.
The Louisiana Supreme Court once again granted writs and ordered the judgment of the Court of Appeal set aside. The case was “remanded to the Court of Appeal for disposition of the merits of the appeal.” State v. Broussard, 478 So.2d 896 (La.1985). Although it did not state a basis for setting aside the ruling of the Third Circuit, the Supreme Court must have felt that the consent judgment was criminal in nature and therefore, the motion to quash was the correct procedure.
The Third Circuit addressed the merits of the writ application in State v. Broussard, 487 So.2d 1261 (La.App. 3rd Cir.1986). In this opinion, the court thoroughly reviewed the criminal non-support laws pertinent to the case. (Arts. 74, 75 and 75.2 of the Louisiana Criminal Code.) After reviewing the statutes, the court concluded that the legislative scheme was to provide a criminal offense of neglect of family under Art. 74, but to provide methods whereby consenting parents could avoid the criminal implications of prosecution under Art. 74. Likewise, Art. 75.2 allows the neglectful parent to enter into a stipulation and thereby avoid the necessity of criminal proceedings under Art. 74. Additionally, the statutory scheme established by Art. 75, which also applies to an agreement under Art. 75.2, places the neglectful parent in a position little different from a party against whom a judgment for alimony or child support has been rendered in a civil proceeding. When viewed in its essence, according to the Third Circuit, the consenting defendant under Art. 75 or a consenting party *105 under Art. 75.2, is no worse off than a defendant in a civil suit against whom a judgment for alimony or child support is rendered. All the court can do is hold a rule to show cause in which imprisonment is a possible result. Last, it was determined that the similarities between the Art. 75 approach and the adversary approach in civil suits strongly indicates that the provisions of Art. 75 and 75.2 are not designed to determine guilt or impose punishment.
In Broussard, the defendant contended that he should have been “Boykinized” when he signed his Art. 75.2 stipulation, and because this did not occur, his due process rights had been violated. The defendant’s assertions were based upon his contention that proceedings under Art. 75, including those based upon Art. 75.2 stipulations, are inextricably bound up with Art. 74, the criminal article, and that such proceedings were “criminal in nature.” The Third Circuit specifically rejected this contention based upon its belief that Art. 75-75.2 proceedings “stand on their own.” It said that Art. 75 and 75.2 proceedings, although they are an alternative to prosecution for criminal neglect of family under Article 74, effectively take matters out of the prosecutorial context and place the desired social end in a court-approved agreement which may be enforced through contempt proceedings. Thus, the court held that a party who consents to an Art. 75 order or enters into an Article 75.2 stipulation is not involved in a judicial process which requires adherence to strict due process standards. Therefore, no violation of defendants’ due process rights occurred as a result of the consent judgment based upon Broussard’s Article 75.2 stipulation. Thus, the trial court’s granting of the motion to quash was reversed.
The Louisiana Supreme Court again granted writs in State v. Broussard, 490 So.2d 273 (La.1986). The judgment of the Court of Appeal was reversed and the judgment of the district court granting the motion to quash was reinstated.
In reversing the judgment of the Court of Appeal, the Supreme Court noted that the defendant had been charged under LSA-R.S. 14:74, a criminal statute. However, the Supreme Court also stated that some of the provisions of LSA-R.S. 14:75, 75.1 and 75.2 are necessarily criminal in nature. Although the defendants in the instant case have not been formally charged with criminal neglect of family, had they not signed the Article 75.2 stipulations, that would have clearly been the next step. Whether there has been a charge under R.S. 14:74 does not seem to be a salient factor in the ultimate decision in Broussard. In dealing with these statutes, the Supreme Court held that the defendant is entitled to counsel and if he cannot afford one, counsel must be appointed to represent him. The Supreme Court further held that the trial judge shall explain the defendant’s rights to him (Cf. the customary “Boykin examination”) before any proceeding under LSA-R.S. 14:75 is initiated. In the instant case, the proceedings were initiated under LSA-R.S. 14:75 pursuant to a stipulation under LSA-R.S. 14:75.2. The customary “Boykin” examination was not conducted before the proceedings were initiated.
The state asks that we distinguish this case from Broussard because proceedings against Broussard had been initiated under Article 74, whereas no such proceedings are pending in the instant cases. We note that the Third Circuit considered whether the institution of the criminal proceedings against Mr. Broussard had any effect upon his due process rights which might affect the validity of his Article 75.2 stipulation. The court said that the Article 74 proceedings did not affect the Article 75.2 stipulation. The court stated:
We are not unmindful of the fact that in this case events began when Brous-sard was charged by bill of information with criminal neglect of family in violation of Article 74 which was followed by his arrest. We are not convinced that this is pertinent or that it somehow fuses the stipulation under Article 75.2 with the commencement of prosecution under Article 74. If this were so, Article 75 *106 consents would also be affected because Article 75 provides for consent agreements “at any time prior to trial on a charge of criminal neglect of family.” As we demonstrated under our discussion of the law, proceedings under Article 75 through consent or Article 75.2 through stipulation (as in this case) break the connection with the instituted prosecution. Such proceedings stand on their own and are not prosecutorial proceedings.
The state in the instant case suggests that we should make a distinction between these cases and Broussard on a point which the Third Circuit felt had no significance. This we decline to do.
Further, the Supreme Court had before it an exhaustive and scholarly dissertation by our brothers on the Third Circuit as to the effect of these statutes on a person’s due process rights and a person’s rights to be “Boykinized” at the time of the execution of an Article 75.2 stipulation. Although we are reluctant to speculate beyond what the Supreme Court actually said in its Per Cu-riam opinion overruling the Third Circuit, we note that if the Supreme Court believed that due process rights were involved only when a criminal prosecution had actually been instituted, the court could have said so. It did not. Instead, the court specifically stated that some of the provisions of Articles 75, 75.1 and 75.2 are necessarily criminal in nature and that before any proceeding under Art. 75 is initiated the trial judge shall explain the defendant’s rights to him.
Although none of the defendants involved herein have been charged with a crime or arrested, the provisions of LSA-R.S. 14:75 and 75.2 have been applied to their individual cases. As stated by the Louisiana Supreme Court, some of these provisions are necessarily criminal in nature. Following the latest pronouncement by the Louisiana Supreme Court, we believe we are directed to hold that the trial judge must explain the defendant's rights to him, i.e., the customary Boykin examination, before any proceedings under LSA-R.S. 14:75 can be initiated.
Even though the defendants were not “Boykinized” as now required by Brous-sard, we find that they are not entitled to any relief as each defendant entered into an Article 75.2 stipulation before State v. Broussard, 490 So.2d 273 (La.1986), was handed down on June 20, 1986.
In Brown v. Louisiana, 447 U.S. 323, 100 S.Ct. 2214, 65 L.Ed.2d 159 (1980) the U.S. Supreme Court stated that the test for deciding whether a new constitutional doctrine should be applied retroactively contemplates the consideration of (1) the purpose to be served by the new doctrine; (2) the extent of the reliance by law enforcement authorities on the old standards; and (3) the impact on the administration of justice of a retroactive application of the new standards. The foremost among these factors is the first, and with controlling significance to be given to the other factors only when the first factor does not clearly favor retroactivity or prospectivity. In the instant case, the Louisiana Supreme Court decision in Broussard announced constitutional due process requirements to proceedings where they had not previously applied. Broussard recognized that it is important that an individual signing an Article 75.2 stipulation have a clear understanding of the implications of his act. However, the requirement of a judicial colloquy at the time of signing the stipulation has never before been required and it is apparent that public officials dealing with Article 75.2 stipulations have consistently handled these stipulations without court intervention. To apply the Broussard doctrine retroactively would effectively destroy throughout the state of Louisiana Article 75.2 stipulations and their subsequent Article 75 consent judgments.
In Broussard, the Supreme Court made no pronouncement on whether the rule of that case should be applied retroactively to all Article 75 and 75.2 proceedings initiated prior to the date of that decision or prospectively to proceedings initiated after that date. The decision to apply right to counsel and Boykin rights to these proceedings is similar to the decision in State v. Jones, 404 So.2d 1192 (La.1981) which first *107 applied Boykin rights to misdemeanor prosecutions in Louisiana. In Jones, the Supreme Court limited application of that decision to “pipeline” cases and misdemeanor prosecutions initiated after the Jones decision.
Similarly, the rule of Broussard should be applied only to pipeline cases and Article 75 and 75.2 proceedings initiated after the effective date of that decision. Since the stipulations and proceedings in the instant cases occurred prior to the effective date of Broussard, the rule of that case is not applicable and the prior proceedings may serve as the basis or predicate for the instant enforcement proceedings.
Therefore, the writ of each defendant is recalled. The motions to quash are overruled. The writ application filed by the state is granted and made peremptory, and the judgment of the trial court is reversed insofar as it disallows criminal sanctions under LSA-R.S. 14:75. These cases are remanded to the trial court for further proceedings.
DEFENDANT’S WRITS OF REVIEW ARE RECALLED AND DENIED;
STATE’S WRIT OF REVIEW GRANTED AND MADE PEREMPTORY; CASES REMANDED.
JASPER E. JONES, dissents with reasons.
[[Image here]]
*108 [[Image here]]
*109 [[Image here]]
*110 [[Image here]]
*111 [[Image here]]
*112 [[Image here]]