528 So.2d 667 (1988)
STATE of Louisiana, Appellee,
v.
Robert Steven CREAMER, Appellant.
No. 19607-CA.
Court of Appeal of Louisiana, Second Circuit.
May 4, 1988.
*668 Raymond Lee Cannon, Tallulah, for appellant.
David Baughn, Sp. Asst. Dist. Atty., Tallulah, for appellee.
Before JASPER E. JONES, FRED W. JONES, Jr. and LINDSAY, JJ.
JASPER E. JONES, Judge.
The State of Louisiana through the Department of Health and Human Resources filed a petition on behalf of the minor child Erin Hillary Creamer seeking an increase in monthly child support payments and child support arrearages. The defendant was without counsel at this hearing wherein judgment was rendered ordering the defendant to pay an increased amount of child support. Prompted by defendant's failure to pay in violation of the order of the trial court, the State instituted contempt proceedings against the defendant under LSA-R.S. 46:236.1 et seq. A contempt judgment was entered against the defendant, from which the defendant now appeals. The defendant's right to counsel at the initial hearing is the issue on appeal. We reverse the defendant's contempt conviction for the reasons set forth below.

FACTS
Robert Steven Creamer, the defendant, and Karol Broadway Creamer, now Karol Osborn, were divorced in May of 1982. One child was born of the marriage, Erin Hillary Creamer. In the judgment of divorce custody was awarded to the mother and the defendant was ordered to make child support payments in the amount of $150.00 per month.
In January of 1986, the State through the Department of Health & Human Resources filed a petition seeking judgment against the defendant for past due arrearages and further demanding an increase in child support.[1] Trial was held on the petition on August 19, 1986. At the outset of the hearing, the defendant informed the court he was financially unable to retain counsel. The matter proceeded with the defendant representing himself after the trial court ruled an attorney could not be appointed as no criminal penalty evolved from the action.[2]
*669 Judgment was rendered and signed on August 19, 1986. Contained within the judgment were provisions ordering the defendant's support obligation increased from $150 to $250 per month and further ordering an income withholding assignment should the defendant become delinquent in making payments. Although a return date was set for an appeal to this court, the appeal was not pursued by the defendant.[3]
The defendant became delinquent and on May 4, 1987 the State filed a rule requesting the defendant be held in contempt of court for his failure to comply with the terms of the August 19, 1986 judgment.
The defendant signed an affidavit of indigency and an attorney was appointed to represent him at the June 17, 1987 contempt hearing. The State called Christine Oney, an employee of the state support enforcement services, who testified her records reflected the defendant owed $2,236.50 in child support arrearages. No other witnesses were called by the State, nor were any defense witnesses presented. When questioned by the court as to the nature of the defense, the defendant's counsel admitted the defendant had not made the child support payments ordered by the trial court, stating "we have no defense of payment."
The trial court held the defendant in contempt of court and ordered the defendant to maintain paying $250.00 per month in child support, together with an additional amount per month for arrearages to be deducted by wage assignment. The court also sentenced the defendant to serve a six month jail sentence. The sentence was suspended and the defendant was placed upon five year probation upon the condition the defendant comply with the terms of the contempt judgment.
For the following reasons, we hold the contempt judgment must be set aside because it is based upon an invalid predicate judgment. A defendant who is brought to trial upon a petition for support filed by the State pursuant to R.S. 46:236.1 must be advised of his right to counsel. This fundamental right to counsel arises and applies to this defendant because the judgment rendered against the defendant wherein he was uncounseled was used as a basis to punish him for contempt under R.S. 46:236.7. We make this determination relying upon the supreme court decisions of State v. Broussard, 490 So.2d 273 (La. 1986); State v. St. Pierre, 515 So.2d 769 (La.1987); and State v. Scott, 508 So.2d 101 (La.App. 2d Cir.1987), aff'd in part, rev'd in part, 519 So.2d 104 (La.1988),[4] discussed infra.
*670 Enforcement of Support Obligations by the State under LSA-R.S. 14:74, 14:75, 14:75.2 and LSA-R.S. 46:236, et seq.
The State may proceed to collect child support payments by two procedural methods applicable to the instant case. The first procedural vehicle is located under the criminal neglect of family statutes found in the Louisiana Criminal Code. LSA-R.S. 14:74 provides for the institution of proceedings against the defendant for criminal neglect of family. The following statutes, LSA-R.S. 14:75 and R.S. 14:75.2 are alternative procedures to R.S. 14:74. Under R.S. 14:75, the defendant may consent to a support order issued by the trial court "at any time prior to a trial on a charge of criminal neglect of family." Under R.S. 14:75.2, the defendant and the district attorney may stipulate to an order of support without the necessity of instituting criminal proceedings under the provisions of LSA-R.S. 14:74. See State v. Scott, supra.
Both alternatives are governed by the enforcement provisions of R.S. 14:75. Upon violation of the support order in either case, the trial court may issue an order directing the defendant to show cause why he or she should not be found in contempt of court for violation of the support order. If the defendant is found guilty of contempt for failure to comply with the support order, the defendant may be imprisoned for not more than six months, subject to suspension under LSA-R.S. 15:305 at the discretion of the trial court. The defendant may also be fined an amount not to exceed $100.
The State did not proceed pursuant to these statutes in the instant case. The defendant was not arrested, nor was he charged with criminal neglect of family under R.S. 14:74. No stipulation to support was entered by the defendant and the district attorney under R.S. 14:75.2.
Although the district attorney did not proceed pursuant to the aforementioned statutes, their review remains pertinent because of the similarity in their content to those statutes under which the district attorney did exercise his authority to collect the child support owed by the defendant.
The procedural vehicle employed by the State in the instant case is found under the aid to families with dependent children (AFDC) statutes, LSA-R.S. 46:236 et seq. The State, through the DHHR, is authorized to obtain and enforce child support orders for those individuals not receiving AFDC benefits, upon application requesting such services. LSA-R.S. 46:236.1(B)(2). The defendant and the district attorney may stipulate to an order of support under LSA-R.S. 46:236.7(A)(1).
Where the defendant violates the support order, either where the order is entered after stipulation or issued after trial, the trial court may issue an order directing the defendant to show cause why he or she should not be found in contempt of court for violation of the support order. LSA-R. S. 46:236.7(B). The penalties for contempt under LSA-R.S. 46:236.7(B)(1) are exactly the same as found under R.S. 14:74 and R.S. 14:75, as the defendant may be imprisoned for not more than six months, subject to suspension and probation under LSA-R. S. 15:305 at the discretion of the trial court, and fined an amount not to exceed $100.
In State v. Broussard, supra, the supreme court invalidated a contempt judgment because the defendant was without counsel at the time the defendant entered the stipulation to the support order. The defendant in the instant case similarly argues his contempt conviction should be invalidated because he was denied counsel at the trial after which the support order was issued. We find merit to defendant's argument.
In Broussard, the defendant was originally charged by bill of information with criminal neglect of family, and his arrest followed. After meeting with the district attorney, the defendant signed a written stipulation pursuant to R.S. 14:75.2. The State later sought to hold the defendant in *671 contempt of court for failure to comply with the support order issued by the trial court pursuant to the stipulation. The defendant was not represented by counsel at the time he agreed to the stipulation, nor did the defendant waive his right to counsel. Upon granting a second writ application by the defendant, the supreme court dismissed the case against the defendant because certain constitutional rights were not made available to the defendant. The supreme court held:
After defendant is charged with criminal neglect of family, the provisions of R.S. 14:75, 75.1 and 75.2 come into play. Some of these are necessarily criminal in nature. The defendant is entitled to counsel and if he cannot afford one, counsel must be appointed to represent him. [emphasis added]
In State v. St. Pierre, supra, the supreme court reiterated the holding of Broussard, overturning a contempt conviction because the defendant did not have an attorney at the time he consented to the support stipulation. Citing Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), in which the right to counsel was extended to misdemeanor convictions which result in imprisonment, our supreme court stated:
Following Argersinger, we have repeatedly held that its extension of the right to counsel to misdemeanor cases must be given retroactive effect, such that an uncounseled misdemeanor conviction obtained prior to Argersinger, regardless of whether it resulted in the imposition of a jail sentence, could not be used to subject the same defendant to an enhanced penalty and imprisonment for a subsequent offense. State v. Strange, 308 So.2d 795 (La.1975); City of Monroe v. Fincher, 305 So.2d 108 (La.1974). Similarly, the defendant's uncounseled entry of the support stipulation in this case cannot be used as a basis to punish him for contempt under R.S. 14:75. [emphasis added]

The record reveals the State sought no criminal penalties at the trial of the petition for an increase in child support. The argument that the right to counsel attaches only at the advanced stage of contempt proceedings where imprisonment is a possibility has been rejected by the supreme court in Broussard and St. Pierre. Due process rights become involved when the district attorney proceeds against the defendant under statutes which are necessarily criminal in nature as are the provisions of R.S. 14:75, 14:75.1, and 14:75.2. Although no possibility of imprisonment arises when the defendant enters a support stipulation under R.S. 14:75.2, the right to counsel attaches because the proceedings are prosecutorial in nature and a subsequent violation of the support stipulation serves as the basis to punish the defendant for contempt under R.S. 14:75.
In Scott, supra, though there was no prior criminal prosecution under LSA-R.S. 14:74, the right to counsel was triggered at the time the support order was sought, the violation of which subjected the defendant to imprisonment for contempt. Similarly, where the State initiates proceedings against the defendant to obtain a support judgment under R.S. 46:236 et seq, violation of the support order issued by the trial court serves as the basis for contempt proceedings under R.S. 46:236.7. The manner in which the district attorney proceeds and the penalties to which the defendant is potentially subjected under R.S. 46:236 et seq are indistinguishable from those proceedings under R.S. 14:75 wherein the supreme court has held the defendant must be afforded counsel.
We find the Broussard rationale applicable and controlling in the instant case. The fundamental right to counsel applies to this defendant. Absent a knowing and intelligent waiver, no person may be imprisoned for any offense unless he was represented by counsel at trial. Argersinger, supra; State v. LaFleur, 391 So.2d 445 (La.1980).
Where the defendant waives counsel, the record must reveal the trial court attempted to determine defendant's literacy, competency, understanding, and volition before the waiver is accepted by the court. State v. Bell, 381 So.2d 393 (La.1980); State v. LaFleur, supra. The *672 court should inform the defendant of the dangers and disadvantages of self-representation, so that the record will establish that "he knows what he is doing and his choice is made with eyes open." Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); Adams v. United States ex rel. McCann, 317 U.S. 269, 62 S.Ct. 236, 87 L.Ed. 268 (1942); State v. Bell, supra; State v. Skeetoe, 501 So.2d 931 (La.App. 2d Cir.1987).
A review of the record indicates the defendant never effectively waived his right to counsel. The defendant was aware of his need for counsel and requested a court-appointed attorney after informing the court of his indigent status. The trial court denied his request based upon the belief expressed by both the trial court and the district attorney that the defendant had no right to counsel because the proceeding was a civil action. For the aforementioned reasons this conclusion made by the trial court is incorrect as the action initiated by the district attorney under the full authority of the State which can serve as a predicate for imprisonment is criminal in nature.
An entry to a stipulation for support is likened to a guilty plea to a charge of criminal neglect of family in St. Pierre.[5] The supreme court has held in those circumstances the defendant has a right to counsel. This right is not diminished where the defendant declines to enter a stipulation and exercises the option to proceed to trial on the issue of support. Imprisonment does not result when the defendant enters a stipulation to support nor where the trial court issues a support order after trial. However, violation by the defendant of either the stipulation or the support order issued after trial will serve as a potential basis for imprisonment of the defendant for contempt. In either instance where the State pursues the defendant, the defendant is entitled to counsel.

Decree
For the above expressed reasons, the defendant's conviction and sentence for contempt of court are reversed. The judgment rendered August 19, 1986 upon which the contempt judgment was predicated is reversed because the defendant was denied his constitutional right to counsel.
REVERSED and RENDERED.
NOTES
[1] The State, acting through its state agency, the Department of Health and Human Resources, is authorized to enforce the child support obligation owed by the obligor spouse where AFDC benefits are being received. LSA-R.S. 46:236.1(B)(1). The DHHR shall provide the same services to obtain and enforce support obligations where no AFDC benefits are being received upon receipt of application by the individual requesting such enforcement services. LSA-R.S. 46:236.1(B)(2). The instant case falls in the second category as the record reveals no AFDC benefits were being received at the time of these proceedings by Karol Osborne and her family.
[2] The record reflects the following colloquy on August 19, 1986:

JUDGE BRACKIN: Creamer. Well, you called me on the telephone.
STEVE CREAMER: Yes, I did.
JUDGE BRACKIN: And you explained that you could not afford an attorney.
STEVE CREAMER: Yes sir. I'm right in the middle of bankruptcy and relocation and many other things. The only reason I have any money today is my boss gave me an advance on future sales. In other words, I'm working out of the red right now where I work.
JUDGE BRACKIN: All right. Do you understand I cannot appoint an attorney for you?
STEVE CREAMER: Yes sir. I did try to go to Legal Aid, but they told me that this was a case handled by the prosecutor, and then it was a, was not a civil matter; it was a criminal matter.
JUDGE BRACKIN: They're wrong.
STEVE CREAMER: So they declined to give me any ... this was through the secretary, talking to somebody in the background. So I felt that I, I just arrived last night at twelve o'clock. So I didn't really have a chance to talk to anybody.
JUDGE BRACKIN: Well, let's see. Is this a rule or, is this a rule or is it a default or what?
DAVID BAUGHN: It's simply a petition, Your Honor. The State is seeking no criminal penalties in this cause. We allege that they are the parents of a child that Mr. Creamer was ordered to pay a hundred and fifty dollars per month, and has failed to pay December, 1985, child support payment. We further allege that the children are not receiving AFDC, that he is able to pay a hundred and fifty dollars per month, and that Mrs. Osborne requests an increase to three hundred.
JUDGE BRACKIN: All right. Now, Mr. Creamer, regardless of what you were told at Legal Aid, the District Attorney, under the Federal Law, is required to handle civil actions as well as criminal actcome, come inside, sir, and stand there. Civil and criminal actions. This is one of those type of civil actions that the District Attorney's office has to handle. They're forced to handle in order to participate in the Federally funded enforcement program. Do you understand?
STEVE CREAMER: No sir. I'll tell you right now, I don't understand at all.
JUDGE BRACKIN: Well, it's basically down to this, that you're not entitled to an attorney, to have a free attorney because there is no criminal penalty involved in this action. Now then. Are you ready to proceed? Do you want time to get an attorney or what?
STEVE CREAMER: Well, Your Honor, my testimony is to fact that we were paid up through December, and I
JUDGE BRACKIN: You may represent yourself is [sic] you wish, and present your side of the case at this time.
[3] The record reveals the clerk never lodged the record of the proceedings with this court and no briefs were filed by either litigants. However, we need not address the status of this appeal as we reverse the August 19, 1986 judgment upon which the appeal was based.
[4] The supreme court affirmed Scott, supra, on its basic holding that application of the Broussard rationale mandated that defendant was entitled to the right to counsel and Boykinization, and reversed Scott solely on its incorrect holding that Broussard did not require retroactive application of the right to counsel.
[5] A plea of guilty to a criminal offense triggers the protections afforded by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). In St. Pierre, the Supreme Court held because the stipulation under 14:75.2 operates essentially as a guilty plea to a criminal charge under 14:74, the defendant must be "Boykinized" at the time the stipulation is entered. The Boykin protections are not triggered in the instant case as the defendant entered no stipulation under R.S. 46:236.7 but rather proceeded to trial on the issue of support.