MICHAEL DAVID HEBERT,
v.
KATHLEEN MARIE HEBERT.
No. 09-558.
Court of Appeals of Louisiana, Third Circuit.
March 17, 2010.
Not Designated for Publication.
HENRY R. LILES, Liles & Redd Counsel for Plaintiff/Appellee: Michael David Hebert.
ALFRED BRUCE SHAPIRO, Attorney at Law, Counsel for Defendant/Appellant: Kathleen Marie Hebert
Court composed of COOKS, SAUNDERS, PETERS, GREMILLION, and CHATELAIN,[1] Judges.
SAUNDERS, Judge.
Herein, we address whether the trial court erred in not granting the Appellant's motion to continue a contempt proceeding on the basis that she was not represented by counsel. For the following reasons, we affirm the ruling of the trial court. Further, we find no merit in the Appellant's contention that the trial court erred in not advising her of her privilege against self-incrimination.

FACTS AND PROCEDURAL HISTORY:
This appeal arises from a rule for contempt of court, which was filed by Michael David Hebert on April 24, 2008. Mr. Hebert alleged that Kathleen Marie Berry Hebert,[2] his ex-wife, was in contempt of court for failure to pay court-ordered child support. The record reflected that the parties engaged in numerous custody and support proceedings through the years. The trial court set forth the following litany of events:
I do want the record to reflect that history suggests in a four volume set that this is the seventh contempt in this Court in the suit for the reasons we find ourselves here.
On May 17, 2006, there were written reasons for judgment in this matter and then a suggestion that there was a contempt for denying access and the process for restitution in which it was asserted at that time that there was a contempt by the parties to bring it to the Court's attention and failure to abide by a valid order.
In July 7, 2006, there was a contempt by Mr. Hebert for failure to provide insurance proof and cards, failure of telephone access, and the administration of medications that was presented at that time.
On August 11, 2006, there was a contempt rule filed by Ms. Berry for denial of access, failure to cooperate, and for makeup time and to comply with a joint custody plan.
In February of 2007 there was a contempt filed by Mr. Hebert for failure to comply with the February 1, 2007, judgment whereby child support issues were raised and an imposition of a 10-day sentence pursuant to an agreement by Ms. Berry and the Court's support enforcement division or the state's support enforcement division with the Court's hearing officer and property issues were raised at that time as well. On 10-30-2007 there was a contempt filed by Mr. Hebert for failure to comply with the February 1, 2007, judgment.
On November 5, 2007, there was a contempt filed by Ms. Berry for interference with access and denial of access.
On April 24, 2008, there was a contempt filed by Mr. Hebert for a violation of injunctions, the allegations of making fraudulent claims and for fraudulent representations to the office of community service.
At the time of this contempt proceeding, Ms. Berry was represented by Kathleen Wilson. On October 24, 2008, during the hearing on the rule for contempt, while cross-examining Mr. Hebert, the court inquired as to whether Ms. Berry could stop for the day. Ms. Wilson answered in the affirmative. The court then noted that it would have to "pick another date to set this matter to complete this phase of the trial." The rule for contempt was then continued for hearing on February 12, 2009.
The record reveals that Ms. Wilson filed a Motion and Order to Withdraw as counsel of Record on January 7, 2009, which was signed by the trial court on January 13, 2009.[3] Ms. Berry also acknowledged in her "Notification to Family Court" that she was aware of Ms. Wilson's possible withdrawal as early as December 5, 2008.
The hearing resumed on February 12, 2009, and Ms. Berry was not represented by counselto which she objected multiple times. However, it was not until the day of the hearing that she requested a continuance. The trial court denied the motion to continue, and testimony was adduced from the parties present at the hearing. Ms. Berry testified, although she refused to answer many of the questions posed to her. At the conclusion of the hearing, the trial court gave the following oral reasons for judgment:
This court at this time finds proof sufficient that Mr. Hebert has not only set forth that there is an obligation owed that Ms. Berry has failed to pay the support as ordered. It should be noted that Ms. Berry is suggesting in her argument, whatever limited that might be, is mostly to the last argument that she made in October that her support was too great. It should be noted that there are no formal requests in the record for a motion to modify support and/or reduce support. Ms. Berry may very well be entitled to a recalculation of support based on her current income levels. There is no request in the record to reflect that.
This Court finds it clear that Ms. Berry perjured herself when she said on the stand and the Court's notes and the transcripts reflect that she was not employed at the time of the last hearing when in fact  or the time prior to the last hearing  when in fact she indeed worked as evidenced in Michael Hebert 20 through 22 today suggests she was employed by the Cameron Parish School Board and had an income as the evidence suggests in excess of $50,000 a year.
It should also be noted that Ms. [Berry] other than the income assignment has made no attempts to pay support on behalf of her children in this matter and as a result thereof this Court's going to find Ms. Berry in contempt. It is going to order that the amount as ordered of an executory judgment of the $18,386.67 will now be made executory close of business 2-12-2009.
The Court is going to leave this case open and allow Ms. Berry 30 days to submit any receipts of any payments made and she shall receive any credits for any support payments she's made to the Court that may offset that amount that has been made executory.
The Court should also note that Ms. Berry shall within 10 days of notice of today  actually, I'm going to give Ms. Berry 10 days to provide proof of insurance if it's available through her employer per the judgment as offered earlier. She is going to be responsible for the legal interest of this proceeding.
The Court's going to set attorney's fees at $2500 and all court costs are assessed to Ms. Berry. Ms. Berry is sentenced to 30 days in the Calcasieu Correctional Center. That 30 days is to run concurrent with the prior 10 days that was suspended. And again, all costs of these proceedings are assessed to Ms. Berry.
Ms. Berry lodged this appeal and requests that this court reverse her conviction for contempt of court.

ASSIGNMENT OF ERROR:
Ms. Berry alleges that the trial court erred in not honoring her request for counsel in the contempt proceeding and in failing to advise her of the privilege against self-incrimination.

LAW AND DISCUSSION ON THE MERITS:
Ms. Berry has argued on appeal the trial court erred in refusing to allow her ample time to obtain counsel. The following colloquy occurred at the February 12, 2009 contempt hearing between the parties:
THE COURT: Let the record reflect Mr. Hebert is here; and I understand Mrs. Berry is here pro se?
MS. BERRY: No, that's not correct, Your Honor. I did not enroll as pro se. I sent notification to the Court that I do not have counsel and requested time to seek counsel[.]
THE COURT: All we're doing is giving appearances.
MS. BERRY: I'm here.
THE COURT: You're here pro se in that you're here alone.
MS. BERRY: Yes, thank you.
THE COURT: Let the record reflect the same, and I will give you an opportunity  I want the record to reflect I did receive  it is not a motion, it is a  Court is in receipt of a notification to Family Court, which is not in the form of a motion, the Court having just received this matter 15 minutes before the starting of this hearing, will give Ms. Berry an opportunity to address the Court as it relates to the notice to Family Court.
The Court's not sure what you requested in this notification to Family Court.
MS. BERRY: Well, I put a notice to Family Court that I do not have counsel and I am seeking to obtain counsel.
THE COURT: I want to make sure the Court understands. You're asking this Court to continue this case?
MS. BERRY: Unfortunately, Your Honor.
THE COURT: I just want to make sure I understand.
MS. BERRY: Unfortunately, I don't have counsel at this time and in order for me to obtain counsel I'm going to need time. Even if I hired someone, they're going to need time to be briefed on what I'm seeking for trial.
THE COURT: I just want the record to be clear 
MS. BERRY: The record is clear, Your Honor.
THE COURT: That you came into Court and you're asking this Court to not hear your case today.
MS. BERRY: Unfortunately, that's correct.
THE COURT: Mr. Liles, what I think this is paramount or tantamount to is a motion to continue this hearing. Do you object?
MR. LILES: Yes, sir.
THE COURT: You may now state your argument for objection.
MR. LILES: Your Honor, her previous attorney withdrew back in the beginning of January and she's had plenty of time since then to get another attorney. That's a month  I realize it's a lot to catch up on, but  can I see that notice?
THE COURT: You may. The record was completed by the clerk this morning. That's when the Court got notice of the same.
MR. LILES: As far back as December the 5th, Ms. Wilson, according to this, wrote to her and said I'm filing my motion to withdraw today, that was December 5th and again on December 8th she received an e-mail from Ms. Wilson saying, "I no longer represent you. When do you want to pick up your file? I need to know in advance so I can have it copied." Apparently this e-mail was received by Ms. Berry since she said right here that it was. That's two months that she's had to get an attorney, Judge. So we set this today for us to complete this and it may be quite a while before we can get back into court. So we would ask that you deny, if that's a motion to continue, deny it.
THE COURT: Ms. Berry, any other argument on your request to 
MS. BERRY: Would you like me to stand up?
THE COURT: No, that's fine.
MS. BERRY: Yes, I would, Your Honor.
THE COURT: Why don't you pull that microphone up to you.
MS. BERRY: Yes, that e-mail  it was actually a text message, and it was not a formal  I was informed by several different people that are familiar with the law that she could not withdraw. And so the reason that I have not obtained counsel as of today was that I was told that she could not. I did not learn that Ms. Wilson had filed a formal motion for withdrawal  even though it was filed in January  I did not learn of that until about two weeks ago; and I have no wish to be represented by anyone that does not wish to represent me. And at that time I had actually sought to obtain counsel, as the Court noted this morning that the records had been checked out to another attorney here in town, and so I was seeking and am seeking to find representation for myself.
THE COURT: Your notification to Family Court, which the Court has perused, has just gotten notice of suggests that on [December] 5th there was some correspondence between you and your then attorney that she no longer intended to represent you. Why didn't you go find an attorney then?
MS. BERRY: I did. Well, I also attempted  since I was told that she could not leave because of the pending trial  attempted to resume the attorney-client relationship and make sure that she would be here in Court.
THE COURT: The problem, Ms. Berry, is that the criticism that has been heaped upon this Court for failure to hear this timely runs right in to the face of your argument to re-fix this for another date. The Court just doesn't understand all of the efforts you've made to get this matter before the Court to show up on the day of the hearing and say that you want to do it another day. Perhaps that's where the Court's confusion is coming in. Perhaps you can help me realize that all of your efforts, why you're here today asking for another date?
MS. BERRY: Well, if this had been heard timely this would have been over two years ago.
THE COURT: Okay, anything else Mr. Liles?
MR. LILES: No, Your Honor.
THE COURT: The motion to continue is denied. The Court feels Ms. Berry has had ample opportunity to secure an attorney and prepare for the hearing, which she suggests from the beginning has not been  this
Court has not been responsive to her request for timely hearings, and this Court finds proof sufficient that this matter should have been and will be decided in a timely fashion.
MS. BERRY: Your Honor, I am entitled to counsel.
THE COURT: You are. The motion is denied . . .
. . . .
MS. BERRY: I object to this going forward, Your Honor. I am entitled to counsel and I am not represented today by such.
THE COURT: Let the objection be noted for the record. Your question, please.
MS. BERRY: Again, Your Honor, I state I am entitled to counsel, and I will not go forward without counsel.
THE COURT: Are you saying you have no questions for this witness?
MS. BERRY: I am saying I am not representing myself and I am entitled to counsel.
THE COURT: Yes, ma'am. Do you have any witnesses?
MS. BERRY: I am entitled to counsel and request such at this time for a motion for a continuance.
THE COURT: Ms. Berry 
MS. BERRY: Yes.
THE COURT:  your request to refix this hearing has been denied. We are moving on. Now, you have a right to cross-examine any witnesses that Mr. Liles presents. You were in the midst of cross-examination of this witness.
MS. BERRY: This is a violation of my due process.
THE COURT: I understand, ma'am. There are appropriate avenues and venues that you can proceed in that respect. We're going on with this hearing today.
It is well recognized that this is an area where the trial court is afforded great discretion, and its ruling should not be disturbed absent a showing of manifest error or a clear abuse of discretion. In McMillin v. McMillin, 08-502, p. 3 (La.App. 3 Cir. 3/25/09), 6 So.3d 414, 417 we stated:
It is well settled in Louisiana that findings of fact of the trial court will not be disturbed on appeal unless they are manifestly erroneous or clearly wrong. As long as the findings of the trial court are reasonable in light of the record, the appellate court may not reverse even if it would have weighed the evidence differently as a trier of fact.
On the other hand, when reviewing a question of law, the appellate court must simply decide whether the trial court was legally correct or incorrect. "If the trial court's decision was based on its erroneous application of law, rather tha[n] on a valid exercise of discretion, the trial court's decision is not entitled to deference by the reviewing court." In fact, the appellate court must conduct a de novo review of the entire record when it finds a reversible error of law or manifest error.
Our Supreme Court in State v. Seiss, 428 So.2d 444, 447 (La.1983), addressed the dangers and potential for abuse inherent in the strict adherence to the right to counsel in such proceedings.
This court has consistently held that the right cannot be manipulated to obstruct the orderly procedure of the courts and cannot be used to interfere with the fair administration of justice. State v. Champion, 412 So.2d 1048, 1050 (La.1982); State v. Johnson, 389 So.2d 1302, 1304 (La.1980); State v. Jones, 376 So.2d 125, 129 (La.1979); State v. Lee, 364 So.2d 1024, 1028 (La.1978); State v. Anthony, 347 So.2d 483, 487 (La.1977). Defendant must exercise his right to counsel of his choice at a reasonable time, in a reasonable manner and at an appropriate stage of the proceedings. State v. Champion, supra at 1050; State v. Johnson, supra at 1304; State v. Lee, supra at 1028; State v. Leggett, 363 So.2d 434, 436 (La.1978); State v. Cousin, 307 So.2d 326, 328 (La.1975).
In the present case, Ms. Berry had two months between receiving notice of Ms. Wilson's intent to withdraw as counsel and the time of the hearing. We find her inaction over that period of time to be unreasonable. It is also significant that such a great number of attorneys were employed by Ms. Berry over the course of this matter[4].
In the case of Caughron v. Caughron, 579 So.2d 1214 (La.App. 3 Cir. 1991), the court discussed, but never came to a decision on, the issue of the right to counsel. Judge Knoll (now Justice Knoll) produced a dissent in that case in which she found that there was no constitutional entitlement to an attorney in the contempt action because it was a civil rather than criminal proceeding.
In my view since this is a civil proceeding and not a criminal proceeding, he is not constitutionally entitled to a lawyer. Therefore, by holding the hearing without defendant represented by a lawyer, although he was exposed to jail time, is not per se reversible error. In my view, public policy dictates that the enforcement of defendant's obligation bear penal consequences and remain a purely civil proceeding, without triggering the constitutional safeguards provided a criminal defendant. Appointment of counsel at civil support enforcement proceedings would serve only to frustrate public policy. Further, if this is to be the civil requirement, it should be done by legislative act and not by judicial decree.
Finally, I note that all the criminal cases relied upon for appointment of counsel at proceedings for enforcement of support obligation with contempt, involve a criminal proceeding and this distinction is made in the cases. Not every civil case of nonsupport will constitute LSA-R.S. 14:74, which is criminal neglect of family. Since writs were not taken in State v. Creamer, 528 So.2d 667 (La.App. 2 Cir. 1998), (Creamer is a civil proceeding), I would not follow Creamer, which is relied upon by the majority.
Id. at 1216-17.
Judge Knoll's dissent was later adopted by this court in State v. King, 97-1249, p. 4 (La.App 3 Cir. 3/6/98), 707 So.2d 1374, 1377, wherein we stated: "We agree with Justice Knoll's dissent and find these comments equally applicable in a situation where a petition is filed pursuant to La.R.S. 46:236.1. This matter is purely civil; therefore, the defendant is not entitled to a court appointed attorney."
While the case before us resulted in jail time for Ms. Berry, it remains a purely civil matter.
The rights of an accused guaranteed by La. Const. art. 1 sec. 13 cannot be triggered simply because the statute under which a party is pursued provides specific punishments in the event of contempt of the judgment. Indeed, every order issued by a court of this state carries with it the possibility of punishment if a party is found in contempt thereof. See La.R.S. 13:4611.
Id. It is for this reason that we affirm the decision of the trial court and find that Ms. Berry's request for counsel in the proceeding was properly denied.
Regarding Ms. Berry's contention that the trial court failed to advise her of her privilege against self-incrimination, we find no merit in this assignment of error. We note that the record reflects multiple occasions where Ms. Berry invoked her right not to testify and where the right was recognized by the trial court. This is illustrated in the following exchange:
THE COURT: Ms. Berry, now would be a good time to tell you, this is a contempt proceeding against you. Any information that you could share with the Court in an effort to make sure that you get any credits or anything available to you would be the time  now is your hearing  would be the time to do that. If you don't answer any questions the Court's going to have to rule on only the evidence that it has before it, which has been presented.
MS. BERRY: I'm not represented by counsel, Your Honor. I'm not going to answer questions unless I'm properly represented.
THE COURT: Very well, Mr. Liles you may go on to your next witness. Let the record reflect that Ms. Berry has refused to answer any questions of Mr. Liles.
MR. LILES: Your Honor, I do have a few exhibits that I need to introduce based on her testimony.
THE COURT: You may proceed.
MR. LILES: I'll just ask her a few questions about those exhibits.
THE COURT: You may ask her any questions but if she has suggested she has no desire to testify today in this hearing, so what I'm going to allow you to do is present the evidence. I'll give her an opportunity to object on the record for the evidence and the Court will decide whether or not it should be entered into evidence. You may proceed.
Our review of the record reflects that Ms. Berry exercised her Fifth Amendment rights and that those rights were recognized by the trial court. Accordingly, we find no merit in this assignment of error.

CONCLUSION:
Ms. Berry has asserted that the trial court erred in not honoring her request for counsel in the contempt proceeding and in not advising her of her privilege against self-incrimination. For the foregoing reasons, we find no merit in these arguments and we affirm the ruling of the trial court.
AFFIRMED.
COOKS, J., dissenting.
I respectfully dissent from the majority opinion and would choose to reverse the conviction for contempt of court and remand for a new hearing on the contempt charges.
Although the majority references the dissent in Caughron v. Caughron, 579 So.2d 1214 (La.App. 3 Cir.1991), I find the opinion in that case, which is controlling authority, suggests the wiser course to take in the instant case. In Caughron, the father of the minor child at issue was ruled in contempt for failure to pay child support in accordance with a court order. At the contempt hearing, the father moved for a continuance on the grounds he did not have the opportunity to obtain counsel. The trial court denied the motion for continuance and found the defendant guilty of contempt of court and sentenced him to 120 days in jail in default of payment. Mr. Caughron appealed assigning as errors the trial court's refusal to grant him the right to counsel and denying the motion for continuance. The court briefly discussed the issue of the defendant's right to counsel, but in the end declined to rule on that issue. However, this court reversed and remanded on the grounds that the trial court should have granted Mr. Caughron a continuance. This court, noting the "closeness of the legal issue" presented reasoned such a decision would "vouchsafe to defendant all rights he may have by simply holding that the continuance should have been granted." Id. at 1216. After reviewing the facts of this particular case, I believe a similar result is warranted.
Ms. Berry argued she had attempted to procure counsel, and the record supports this assertion. In the weeks prior to the February 12, 2009 hearing, the record was checked out of the clerk's office, which Ms. Berry explained was to allow another attorney to review it with the possibility of representing her in the matter. Thus, it appears Ms. Berry was actively seeking representation in the weeks prior to the hearing. Ms. Berry's asserted that she initially believed, on the advice of others, that Ms. Wilson could not withdraw as her attorney, since they were in the middle of proceedings. However misguided her reliance on this advice was, it does support her contention that she was not fully aware that Ms. Wilson would be allowed to withdraw as her attorney until a few weeks prior to the February 12, 2009 hearing.
When such an important constitutional safeguard as the right to counsel is involved, I believe, as this court previously held in Coughran, the wisest course is to "vouchsafe to defendant all rights [she] may have by simply holding that the continuance should have been granted." Therefore, I would reverse the conviction for contempt of court and remand the case for a new hearing on the contempt charges.
NOTES
[1] Honorable David E. Chatelain participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[2] In the transcript, Kathleen Marie Berry Hebert is addressed by her maiden name, Berry. We will likewise refer to her in this opinion as Ms. Berry.
[3] We note that while the transcript of that date references these items, they are not found in the record.
[4] Six different attorneys were employed by Ms. Berry at different times on this case.